

Tarter Krinsky & Drogin LLP
1350 Broadway
New York, NY 10018
P 212.216.8000
F 212.216.8001
www.tarterkrinsky.com

**Sandra A. Hudak**
**Counsel**
**212-216-1174**
**shudak@tarterkrinsky.com**

**Via ECF**                                                          February 1, 2024

The Honorable Steven I. Locke
United States District Court, E.D.N.Y.
100 Federal Plaza
Central Islip, NY 11722

> Re: *Certicable LLC v. Point 2 Point Commc'ns Corp. et al.*, No. 2:23-cv-5322-NJC-SIL
>     Plaintiff's Motion to Compel Production of Documents and Supplemental Responses

Dear Judge Locke:

We represent Plaintiff/Counterclaim-Defendant Certicable LLC ("Plaintiff") in the above-referenced matter. Plaintiff respectfully seeks an order compelling Defendant/Counterclaimant Point 2 Point Communications Corp. ("P2P") to produce documents responsive to Plaintiff's document requests ("RFPs") and supplemental responses to certain interrogatories ("ROGs").

## I.      Background

As the Court is aware, this is an intellectual property case relating to patented fiber optic cable assemblies. Defendant Krawczyk—P2P's owner—is a former employee of Plaintiff and a named inventor on one of the four U.S. patents relating to the technology at issue ("the Tinifiber Patents") who assigned his rights to Plaintiff. After seeing Plaintiff's success, Krawczyk resigned and began marketing, low quality, knockoff products under a confusingly similar brand name, NANOFIBER. Accordingly, Plaintiff filed suit against Defendants for willful infringement of U.S. Patent No. 10,444,454 ("the '454 Patent") and Plaintiff's TINIFIBER trademark rights.

Pursuant to the Scheduling Order (ECF No. 30), the parties exchanged their first sets of discovery requests on November 17, 2023. (*See* Exs. A (RFPs) & B (ROGs).) On December 18, 2023, the parties served written objections and responses. (*See* Exs. C (RFPs) & D (ROGs).) On January 5, 2024, P2P asked for a meet and confer to discuss Plaintiff's responses. On January 9, 2024, Plaintiff acknowledged P2P's request, and advised that there were issues with P2P's written responses that it wished to discuss in a meet and confer. On the call, **P2P refused** to discuss its written responses. P2P attempted to hide its behavior later, by writing an email on January 20 with a false narrative of the January 17 call. (*See* ECF No. 47-3 at p. 4 of 18.) To date, P2P has produced only of a handful of invoices and refuses to advise if/when any further documents will be produced.

## II.     P2P Refused to Respond to RFP Nos. 4–5, 12–13, 19–20, 25–28, 30–31, 34–38, 40, and 43–45 and ROGs 7 and 9 Without a Meet and Confer, and Then Refused to Confer

In response to each of RFP Nos. 4–5, 12–13, 19–20, 25–28, 30–31, 34–38, 40, and 43–45, P2P refused to answer, stating only that it "agree[d] to meet and confer with Certicable to negotiate an agreed-upon scope for th[ese] Request[s]." As explained above, when it came time to confer,

P2P refused. Each of these requests seek relevant information, and P2P does not assert otherwise:

- **The Supplier(s) and Customers of the Accused Products (RFP Nos. 4–5, 37–38)**: RFP Nos. 4–5 and 37–38 seek documents concerning P2P's suppliers and customers of the Accused Products. For example, RFP No. 5 seeks "[d]ocuments sufficient to identify each of [P2P's] purchases . . . of any Accused Product . . . ." and RFP No. 37 seeks "[d]ocuments sufficient to identify each of P2P's customers . . . ." Such documents are relevant to liability and damages. *See, e.g.*, *Gyro-Trac Corp. v. King Kong Tools, LLC*, No. 2:21-CV-2137-RMG, 2022 WL 3025736, at *2–3 (D.S.C. Aug. 1, 2022) (compelling manufacturer and customer information). They are also critical to stamping out the flow of infringing products into the U.S. marketplace.

- **P2P's Intent to Infringe (RFPs 12–13, 19–20, 40)**: RFP Nos. 12–13, 19–20, and 40 seek information relevant to P2P's intent to infringe and damages (e.g., a reasonable royalty). For example, RFP Nos. 19 and 20 seeks documents "describing any past, present, or future market for any Accused Product" and the "competitive importance of any Accused Product." These materials are plainly relevant. *See, e.g.*, *Infinity Computer Prod., Inc. v. Epson Am., Inc.*, No. CV 18-02532 RGK (RAOx), 2018 WL 7890859, at *1 (C.D. Cal. Dec. 14, 2018) (finding sales of companion product relevant as speaking to importance of accused product).

- **P2P's Representations about Its Infringement (RFP Nos. 25–28)**: RFP Nos. 25–28 seek P2P's communications "with any third party concerning the '454 Patent, Certicable, or this litigation." Here too, P2P has no excuse for avoiding discovery. *See, e.g.*, *Mattel, Inc. v. Rand Int'l Leisure Prod., Ltd.*, No. 06CV807A, 2008 WL 4826320, at *6 (W.D.N.Y. Nov. 4, 2008) (compelling full response to request for "all documents that refer or relate to any communications with retailers regarding this lawsuit").

- **Evidence of P2P's Copying of Plaintiff's Patented Technology (RFP Nos. 30–31, 34)**: RFP Nos. 30, 31, and 34 seek documents concerning research costs (if any) incurred by P2P in developing the Accused Products, and any comparison between Plaintiff's and P2P's products. Such documents are relevant to showing that P2P did not undergo any independent development for its own products but instead knocked-off Plaintiff's technology, and is relevant to a reasonable royalty calculation. *See, e.g.*, *Powell v. Home Depot USA, Inc.*, No. 07-80435-CIV, 2008 WL 11320008, at *2 (S.D. Fla. June 26, 2008) (noting relevance of information concerning "copying or independent development by the infringer").

- **Sales of the Accused Products (RFP Nos. 35–36)**: RFP Nos. 35 and 36 seek "[d]ocuments sufficient to show . . . P2P's gross revenues and net profits generated from sales of the Accused Products" and/or sold "under the NANOFIBER Mark." These sales records are highly relevant to Plaintiff's claims for damages. *See, e.g.*, *Hallmark Licensing LLC v. Dickens Inc.*, No. 17-CV-2149 (SJF)(AYS), 2018 WL 6573435, at *9–10 (E.D.N.Y. Dec. 13, 2018) (compelling disclosure of profits defendant earned as a result of its sale of the accused products).

- **P2P's Use and Selection of the NANOFIBER Trademark (RFP No. 43 & ROG Nos. 7 & 9)**: Plaintiff seeks documents concerning "P2P's inclusion of the 'TM' symbol adjacent the word nanoFIBER" (RFP No. 43) as well as an identification of the products offered under the NANOFIBER Mark (ROG No. 7) and P2P's process for selecting the NANOFIBER Mark (ROG No. 9). An identification of P2P's use of the accused trademark as well as its copying of that mark from Plaintiff are highly relevant to Plaintiff's trademark infringement claims as well as P2P's

argument that "P2P did not launch its nanofiber brand in bad faith." (ECF No. 37, CC ¶ 101.); *see, e.g.*, *Hillyard Enters., Inc. v. Warren Oil Co.*, No. 5:02-CV-329-H(4), 2003 WL 25904138, at *7 (E.D.N.C. Feb. 18, 2003) (compelling information concerning the "selection of each mark").

- **Confusion between the TINIFIBER and NANOFIBER Marks and Harm to Plaintiff** (**RFP Nos. 44 & 45**): RFP Nos. 44 and 45 seek documents "concerning confusion between the TINIFIBER Mark . . . and the NANOFIBER Mark" as well as "complaints . . . concerning fiber optic cables marketed . . . by P2P under the NANOFIBER Mark."  "[C]ustomer confusion" and resulting "reputational injury" are relevant to this trademark infringement action. *See, e.g.*, *Lambda Labs, Inc. v. Lambda, Inc.*, No. 19-cv-04060, 2021 WL 609853, at *2 (N.D. Cal. Feb. 17, 2021); *Hallmark*, 2018 WL 6573435, at *8.

### III.    P2P Should Be Compelled to Respond to RFP Nos. 46–56 Without Updated Citations

In response to each of Plaintiff's RFP Nos. 46–56, P2P refused to answer on the basis that the requests cite to a prior version of P2P's counterclaims and not "the operative Counterclaims." (Ex. C at 38–43.) For example, P2P refused to respond to RFP No. 46—which requests "[a]ll documents that support or refute P2P's allegation that 'P2P does not infringe and has not infringed any valid claim of the '454 Patent'"—on the grounds that the citation referred to P2P's Second Affirmative Defense in its original Answer and not its Second Affirmative Defense in its Amended Answer. Indeed, each of the quotations included in RFP Nos. 46–56 (which cite to ECF No. 19, Countercl. ¶¶ 39–40, 43–44, 49–51, 53, 55, 101) are *identically reproduced* in the operative counterclaims (i.e., ECF No. 37 at Countercl. ¶¶ 41–42, 45–46, 51–53, 55, 57, 102).

P2P's request that Plaintiff engage in the busywork and delay of issuing a new set of document requests that refer to *P2P's own allegations*, to cite to ECF No. 37 rather than ECF No, 19, is pure gamesmanship. *See, e.g.*, *Kearns v. Loandepot.com, LLC*, No. 8:22-cv-1217, 2023 WL 9375111, at *4 (C.D. Cal. Dec. 4, 2023) (rejecting argument that "every time a Plaintiff files an amended complaint it must thereafter re-draft and re-serve all prior discovery requests").

### IV.    P2P Should Be Compelled to Supplement Its Responses to RFP Nos. 29 and 39 and ROG Nos. 6, 10, and 11

P2P's response to RFP No. 39 states only that it will produce a single document, without stating whether any additional "responsive materials are being withheld on the basis of [P2P's] objection[s]," as required by Fed. R. Civ. P. 34(b)(2)(C). P2P should be compelled to supplement.

P2P's response to RFP No. 29 is implausible, stating that P2P does not have any sales reports concerning the Accused Products. (Ex. C at 28.) P2P may be using a strained reading of the term "Accused Products" as the basis for its response. (*See id.* at 3.) P2P seems to have used this same objection to avoid answering ROG No. 11, which disingenuously asserts that "no product has been accused of infringement." (Ex. D.) P2P should be compelled to supplement its responses.

P2P improperly claims in response to ROG No. 6 that the identity of document custodians are privileged or work product. (*Id.*); *see, e.g.*, *Selevan v. SEC*, 482 F. Supp. 3d 90, 94 (S.D.N.Y. 2020) ("[T]he attorney-client privilege protects only communications between attorneys and their clients made for the purpose of providing legal advice[.]") P2P also improperly asserts privilege in response to ROG No. 10 as a hypothetical—it claims privilege without confirming whether "any such information exists" and regardless of whether an attorney was involved.

Respectfully submitted,

*s/ Sandra A. Hudak*

Sandra A. Hudak

cc: All Counsel of Record via ECF