**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Certicable LLC,<br><br>                                          Plaintiffs,<br><br>        -v-<br><br>Point 2 Point Communications Corporation and Roman Krawczyk,<br><br>                                          Defendants. | 2:23-cv-05322<br>(NJC) (SIL)<br>OPINION AND ORDER |
| Point 2 Point Communications Corporation,<br><br>                                          Counter Claimant,<br><br>        -v-<br><br>Certicable LLC,<br><br>                                          Counter Defendants. | |

**OPINION AND ORDER**

NUSRAT J. CHOUDHURY, District Judge:

This case arises out of a dispute over U.S. Patent No. 10,444,454 ("'454 Patent"), which describes the design and assembly of an armored fiber optic cable. (Second Am. Compl. ("SAC") ¶ 15, ECF No. 28.)

1

Plaintiff Certicable LLC ("Certicable")[1] alleges that Defendants Point 2 Point Communications Corporation ("P2P") and Roman Krawczyk ("Krawczyk," collectively, "Defendants") have infringed and continue to infringe the '454 Patent in violation of 35 U.S.C. § 271 ("Section 271"). (SAC ¶¶ 1, 38.) Certicable also brings the following claims against P2P for infringement of its "Tinifiber" trademark: trademark infringement under the Lanham Act, 15 U.S.C. § 1114(a); false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); and common law trademark infringement. (SAC ¶ 2.) Defendants move to dismiss with prejudice claims in the SAC against Krawczyk pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") or, in the alternative, to dismiss the SAC in its entirety because it is materially different from the proposed SAC that Certicable sought leave to file. (Defs.' Mot. to Dismiss SAC, ECF No. 58-1.)

P2P also alleges seven counterclaims against Certicable: (1) a correction of inventorship counterclaim under 35 U.S.C. § 256, (2) a counterclaim under the Declaratory Judgment Act, 28 U.S.C. § 2201, that P2P is not infringing the '454 Patent, (3) a Declaratory Judgment Act counterclaim that the '454 Patent is invalid and/or unenforceable; (4) a tortious interference with business relations counterclaim under New York common law, (5) an unjust enrichment counterclaim under New York common law; (6) a Declaratory Judgment Act counterclaim that P2P is not infringing the "Tinifiber" trademark; and (7) a Declaratory Judgment Act counterclaim that the "Tinifiber" trademark is invalid. (*See generally* P2P's Answer &

---

[1] As I explain below, the parties represent that Certicable Inc. merged with Certicable LLC. (*See* ECF No. 18-1 at 5–7 (Certificate of Merger); Countercls. ¶¶ 15–16, ECF No. 37; ECF No. 25 at 2.) Accordingly, the Clerk of the Court is directed to amend the caption of this case to reflect the caption at the top of this Opinion and Order.

Countercls., ECF No. 37.) Certicable moves to dismiss P2P's counterclaims under Rule 12(b)(1) and (b)(6) with prejudice. (Pl.'s Mot. to Dismiss Countercls., ECF No. 57.)

For the following reasons, I deny Defendants' Motion to Dismiss the SAC (ECF No. 58) and grant Certicable's Motion to Dismiss the Counterclaims with prejudice (ECF No. 57).

## JURISDICTION

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the parties bring federal patent claims under 35 U.S.C. §§ 256 and 271 and claims under the Lanham Act, 15 U.S.C. §§ 1114(a) and 1125(a). The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Certicable's New York common law trademark claim and Defendants' New York tortious interference with business relations and unjust enrichment counterclaims because the state law claims are part of the same case or controversy and arise out of the same common nucleus of operative facts as the federal claims.

Defendants do not raise personal jurisdiction or insufficient service of process defenses under Rule 12(b)(2) and (b)(5), and such defenses are therefore waived. *See* Fed. R. Civ. P. 12(b) ("A motion asserting [a Rule 12(b)(2) or (b)(5) defense] must be made before pleading if a responsive pleading is allowed."); Fed. R. Civ. P. 12(h)(1)(B) ("A party waives any defense listed in Rule 12(b)(2)–(5) by . . . failing to . . . make it by motion under this rule.").

Venue is proper under 28 U.S.C. § 1400(b) because Defendants reside in this judicial district. (SAC ¶ 4 (alleging that P2P is a New York corporation with a principal place of business in Lindenhurst, New York); ¶ 5 (alleging that Krawczyk is a New York resident with an address in Lindenhurst); Answer ¶¶ 4–5 (admitting those allegations).)

## BACKGROUND

Because Defendants move to dismiss the SAC, and because Certicable moves to dismiss the Counterclaims, I describe the facts as alleged in both pleadings separately. For Defendants' Motion to Dismiss the SAC, I assume as true all well-pled allegations in Certicable's SAC and draw all reasonable inferences in Certicable's favor. *See Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020). For Certicable's Motion to Dismiss P2P's Counterclaims, I assume as true all well-pled allegations in P2P's counterclaims and draw all reasonable inferences in P2P's favor. *See id*.

## I.   Facts Alleged Against Defendants in Certicable's SAC and Attached Exhibits[2]

Certicable and P2P are competitors who manufacture fiber optic cables. (SAC ¶¶ 18, 20.) The fiber optic cable industry is highly competitive and competitors closely monitor each other's new products and technology. (*Id.* ¶ 18.) Certicable alleges that Defendants' armored data cable assembly (the "Accused Products"), sold under the "Nanofiber" brand, infringes Certicable's '454 Patent and "Tinifiber" trademark. (*Id.* ¶¶ 1–2, 25.)

### A.   Patent Allegations

Certicable alleges that it is the owner of the '454 Patent, which was issued to it on October 15, 2019. (*Id.* ¶ 16; '454 Patent at 2, SAC Ex. A, ECF No. 28-1.) The '454 Patent is

---

[2] "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quotation marks omitted). The following documents are properly considered on Defendants' Motion to Dismiss the SAC because they are attached to the SAC: the '454 Patent (U.S. Patent No. 10,444,454 (Oct. 15, 2019), SAC Ex. A, ECF No. 28-1); a chart comparing Claim #1 of the '454 Patent with "NanoFiber" Accused Products (SAC Ex. B, ECF No. 28-2); "Tinifiber" trademark Reg. No. 7,199,886 (TINIFIBER, Registration No. 7,199,886, SAC Ex. C, ECF No. 28-3).

titled "Armored Flexible Fiber Optic Assembly," and it includes claims describing the armor, outer and inner jackets, pull material, fiber optic cable, spiral tube, and strengthening material. (SAC ¶¶ 15, 19; '454 Patent at 7.) Certicable alleges that Defendants have infringed and continue to infringe at least Claim 1 of the '454 Patent by selling and importing the Accused Products into the United States. (SAC ¶ 23.) In support of its claim, Certicable attaches a chart comparing Claim 1 of the '454 Patent with the characteristics of Defendants' "NanoFiber" product ("Certicable Comparison Chart"). (SAC Ex. B, ECF No. 28-2.)

Certicable alleges that Defendants have been aware of the '454 Patent since at least the service of the initial complaint in this action on July 12, 2023. (SAC ¶ 17.) Certicable alleges that Defendants were aware of the '454 Patent even prior to the service of the complaint because Krawczyk—P2P's owner, President, and Chief Executive Officer ("CEO")—posted an article on behalf of P2P about Certicable's "Tinifiber" microfiber assembly. (*Id.* ¶¶ 5, 11, 18.)

According to Certicable, Krawczyk "encouraged and induced [] P2P to continue to sell the Accused Products despite being aware of the '494 Patent" (*id.* ¶ 28),[3] and "personally directed and authorized the manufacture, use," sale and importation of the Accused Products, "including by personally directing and supervising the construction and maintenance of websites" and preparation of "advertising and marketing material used to sell the Accused Products" (*id.* ¶ 33).

---

[3] Excerpts from the parties' submissions are reproduced here exactly as they appear in the original. Unless otherwise noted, errors in spelling, punctuation, or grammar will not be corrected or highlighted.

B. <u>Trademark Allegations</u>

Since July 1, 2013, Certicable has sold fiber optic cables under the "Tinifiber" brand. (SAC ¶ 21.) On October 24, 2023, Certicable was granted U.S. Trademark Registration No. 7,199,886 for the mark "Tinifiber" for fiber optic cables. (SAC ¶ 22; TINIFIBER, Registration No. 7,199,886, SAC Ex. C, ECF No. 28-3.)

Certicable alleges that Defendants distribute, advertise, market, and sell fiber optic cables "that incorporate the name NanoFiber" to willfully and knowingly trade off of the goodwill that Certicable has developed in its "Tinifiber" mark. (SAC ¶ 25.) "NanoFiber" breaks down into "nano," which means "very small or one-millionth of a part," and is "substantially similar" to Certicable's "tini" prefix. (*Id.* ¶ 26.) The commonality of the word "fiber" in both marks and the substantial similarity between these two prefixes create a high likelihood of confusion as to the origin of the Accused Products. (*Id.* ¶¶ 26–27.)

## II.   **Facts Alleged Against Certicable in P2P's Counterclaims and Attached Exhibits[4]**

A. <u>Krawczyk Co-Founded Certicable</u>

After obtaining a bachelor's degree in electrical engineering in 1988, Krawczyk began a career in fiber optics and networking. (Countercls. ¶¶ 8–9.) In 2005, Krawczyk co-founded

---

[4] The following documents are properly considered on Certicable's Motion to Dismiss P2P's Counterclaims because they are attached to the Counterclaims: (1) U.S. Patent No. 9,182,562 (Nov. 10, 2015) (Countercls. Ex. 1, ECF No. 37-1); a social media post about the '562 Patent (Countercls. Ex. 2, ECF No. 37-2); several news articles and WayBack Machine website archive printouts (Countercls. Exs. 3–7, ECF Nos. 37-3–7); U.S. Patent No. 9,885,844 (Feb. 6, 2018) (Countercls. Ex. 8, ECF No. 37-8); U.S. Patent No. 9,927,589 (Mar. 27, 2018) (Countercls. Ex. 9, ECF No. 37-9); U.S. Patent No. 10,444,454 (Oct. 15, 2019) (Countercls. Ex. 10, ECF No. 37-10); U.S. Patent Application No. 16/600,253 (filed Feb. 13, 2020) (Countercls. Ex. 11, ECF No. 37-11). *Nicosia*, 834 F.3d at 230 ("A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (quotation marks omitted).

6

Certicable Inc.[5] with non-parties Christian Peterson and Barry Skolnick. (*Id.* ¶¶ 12, 14.)
Certicable is a cable and fiber optic manufacturer. (*Id.* ¶ 12.) Only Krawczyk had prior
experience in designing or manufacturing armored optical cables. (*Id.* ¶¶ 8–9, 11, 14.) Krawczyk
served as Certicable's Director of Sales and Marketing and Chief Technical Officer, Peterson
served as President and CEO, and Skolnick served as Chief Financial Officer and Chief
Operations Officer. (*Id.* ¶¶ 13–14.)

On October 25, 2018, Krawczyk terminated his employment with Certicable. (*Id.* ¶ 43.) It
appears that Krawczyk began working at P2P after he left Certicable. (*Id.* ¶ 7.) Krawczyk is
P2P's owner, President, and CEO. (Answer ¶ 5.) P2P is a leading manufacturer of copper and
armored fiber optic cables sold under the "NanoFiber" brand. (Countercls. ¶¶ 7, 54.) P2P and
Certicable are competitors in the stainless-steel armored fiber optic cable market and share many
of the same customers and manufacturers' representatives. (*Id.* ¶ 56.)

B.   The Certicable Patents

While Krawczyk was working at Certicable, four patents were issued to the company:

- U.S. Patent No. 9,182,562 (Nov. 10, 2015) (the "'562 Patent");
- U.S. Patent No. 9,927,589 (Mar. 27, 2018) (the "'589 Patent");
- U.S. Patent No. 9,885,844 (Feb. 6, 2018) (the "'844 Patent"); and
- U.S. Patent No. 10,444,454 (Oct. 15, 2019) (the "'454 Patent")

---

[5] On September 7, 2022, Certicable Inc. merged with Certicable LLC, which is liable for
Certicable Inc.'s actions. (*See* ECF No. 18-1 at 5–7 (Certificate of Merger); Countercls. ¶¶ 15–
16.)

(together, the "Certicable Patents").[6] P2P alleges that Krawczyk was an inventor of all four patents with an undivided joint interest in each patent, which he assigned to P2P. (*Id*. ¶¶ 44, 46.) According to P2P, Krawczyk did not assign his interest in any of the patents to Certicable, nor did he sign an employment agreement that included such an obligation. (*Id.* ¶ 45.)

On October 16, 2013, Certicable filed the '611 Application,[7] which was subsequently issued as the '562 Patent on November 10, 2015. (*Id.* ¶¶ 17–18; '562 Patent, at 2.) The '562 Patent names Peterson and Skolnick as inventors—it does not name Krawczyk. (Countercls. ¶ 17; '562 Patent at 2.) P2P alleges that Krawczyk was led to believe that he would be named as an inventor. (Countercls. ¶ 19.) He participated in discussions with Certicable's patent attorney and provided technical information regarding armored fiber optic cables, his thoughts on what subject matter could be claimed, and guidance on what made the technology new. (*Id*.)

Although Krawczyk was not named as a co-inventor on the '562 Patent, after it was issued, Certicable posted on social media about Krawczyk "getting" the patent and issued a press release naming him as a co-inventor. (*Id.* ¶¶ 22, 23.) Krawczyk raised concern with being left out as a co-inventor on the '562 Patent with Peterson and Skolnick; Peterson promised to fix the issue, but he never did. (*Id.* ¶ 29.) Later versions of the press release regarding the '562 Patent omit references to Krawczyk. (*Id.* ¶¶ 25, 28.)

---

[6] Countercls. ¶¶ 17–38; '562 Patent, Countercls. Ex. 1, ECF No. 37-1; '589 Patent, Countercls. Ex. 9, ECF No. 37-9; '844 Patent, Countercls. Ex. 8, ECF No. 37-8; '454 Patent, Countercls. Ex. 10, ECF No. 37-10.

[7] U.S. Patent Application No. 14/055,611. ('562 Patent at 2.)

On October 14, 2015, after Certicable filed the '611 Application, but before the '562 Patent was issued, Certicable filed the '716 Application,[8] which was issued as the '589 Patent. (*Id.* ¶ 35; '589 Patent at 2.) The '716 Application was a continuation of the '611 Application and "incorporated [the '611 Application] . . . by reference in its entirety." (Countercls. ¶ 35; '589 Patent at 5.) The resulting '589 Patent names Peterson and Skolnick as inventors, but does not name Krawczyk. ('589 Patent at 2.)

On February 25, 2016, Certicable filed the '605 Application,[9] which was a continuation-in-part of the '716 Application and incorporated by reference both the '611 and '716 Applications. (Countercls. ¶ 31; '844 Patent at 2, 6.) The '605 Patent Application was issued as the '844 Patent and named Peterson, Skolnick, and Krawczyk as inventors. (Countercls. ¶ 31; '844 Patent at 2.) P2P alleges that it was never explained to Krawczyk that the '605 Patent Application was for an entirely new patent, rather than for a correction of inventorship on the '562 Patent. (Countercls. ¶ 32.)

On February 14, 2018, Certicable filed the '607 Application, which was also a continuation of the '716 Application and incorporated by reference both the '716 and '611 Applications. (*Id.* ¶ 36; '454 Patent at 2, 6.)[10] The '607 Application was issued as the '454 Patent and names Peterson and Skolnick as inventors, but does not name Krawczyk. (*Id.* at 2.)

In other words, the '562 Patent and its continuation, the '589 Patent, produced ***two separate offshoots***: one is the '844 Patent, which names Krawczyk as an inventor; the other is

---

[8] U.S. Patent Application No. 14/882,716. ('589 Patent at 2.)

[9] U.S. Patent Application No. 15/053,605. ('844 Patent at 2.)

[10] U.S. Patent Application Number 15/897,607. ('454 Patent at 2.)

the '454 Patent—the patent at issue in this litigation—which does ***not*** name Krawczyk as an inventor. The '454 Patent is titled "Armored Flexible Fiber Optic Assembly," and it includes claims describing the armor, outer and inner jackets, pull material, fiber optic cable, spiral tube, and strengthening material. ('454 Patent at 7.)

P2P contends that Krawczyk contributed to the conception of at least one claim in all four of the Certicable Patents and therefore should be named as an inventor on the '454 Patent. (Countercls. ¶¶ 39–40.) P2P alleges that Krawczyk's career designing armored cables began after a moment of inspiration that took place nearly thirty years ago, when Krawczyk was in a New York City payphone booth looking at a metal payphone cord while speaking with a client who was complaining about rats chewing cables. (*Id.*) Regarding the '454 Patent, P2P alleges that Krawczyk conceived of two elements in Claim 1 of this patent, which also appear in the predecessor '562 and '589 Patents: first, that the "non-interlocking armor [is] formed from a single spiral tube" (*id.* ¶ 41), and second, that the fiber optic cable assembly comprises "an outer jacket" with "an inside diameter slightly greater than an outside diameter of the non-interlocking armor" (*id.* ¶ 42).

C. Certicable Uses the Three Patents to Obtain Investment

P2P alleges that Columbia River Partners invested in TiniFiber Holdings LLC in October 2022, and that the investment was made "only after" the representation by Certicable that it was the sole owner of all rights in the Certicable Patents. (*Id.* ¶ 47.) The Certicable Patents feature heavily in the deal and, on information and belief, played a role in the valuation Columbia River Partners assigned to the investment. (*Id.* ¶ 49.)

D. Certicable Interferes with P2P's Business

As competitors in the stainless-steel armored fiber market, P2P and Certicable share customers and manufacturers' representatives, many of whom worry about patent assertions because they risk being named as parties in expensive patent litigation. (*Id.* ¶¶ 56–57.) Approximately one year before P2P asserted its counterclaims, a French industrial group named Legrand was interested in doing business with P2P, but ultimately abandoned business discussions because of the prospect of being dragged into an expensive patent fight with Certicable. (*Id.* ¶ 57.) P2P alleges, upon information and belief, that Certicable "knowingly and intentionally interfered with P2P's potential business relationship with Legrand by informing Legrand that it considered P2P to be infringing one of more Certicable's patents even though Krawczyk should have been a named inventor on all of the patents in that family." (*Id.* ¶ 58.) On information and belief, P2P asserts that Certicable filed the instant action "not to enforce legitimate patent rights, but rather to frighten P2P's customers and potential customers away from transitioning their business to P2P, to slow the growing success of P2P in the market, and to squash P2P's ability to attract top talent to work at the company." (*Id.* ¶ 59.)

## PROCEDURAL HISTORY

On July 12, 2023, Certicable, Inc. filed the initial complaint in this action against P2P, alleging patent infringement under 35 U.S.C. § 271. (Compl., ECF No. 1.) On July 27, 2023, Certicable, Inc. filed the First Amended Complaint.[11] (First Am. Compl. ("FAC"), ECF No. 8.)

---

[11] An amended complaint filed on July 24, 2023, was later withdrawn. (ECF Nos. 7, 9; Elec. Order, July 28, 2023.)

The FAC added claims for false designation of origin under the Lanham Act, 15 U.S.C.
§ 1125(a), and for common law trademark infringement. (*See generally* FAC.)

On October 13, 2023, P2P filed a letter requesting a pre-motion conference on an
anticipated motion to dismiss the FAC under Rule 12(b)(1). (ECF No. 18.) P2P argued that
Certicable, Inc. lacked standing to assert its claims because it had transferred its entire interest in
the '454 Patent to Certicable LLC, which was not a party to the case at that time. (*Id.*) P2P also
answered the FAC and filed seven counterclaims. (ECF No. 19.) On October 16, 2023, District
Judge Gary R. Brown, to whom this action was previously assigned, granted the request and
scheduled a pre-motion conference for November 15, 2024. (Elec. Order, Oct. 16, 2023.)

On October 18, 2023, this action was reassigned to my docket. (Not., Oct. 18, 2023.) On
October 31, 2023, Certicable, Inc. opposed P2P's request for a pre-motion conference and stated
that Certicable, Inc. had merged with Certicable LLC and that the plaintiff in this action was
"inadvertently listed as 'Certicable Inc.' rather than 'Certicable LLC.'" (ECF No. 25 at 2.)
Certicable, Inc. sought leave to amend to correct the "misnomer issue" and add a claim for
infringement of a registered trademark. (*Id.* at 3.) Certicable, Inc. attached a Proposed Second
Amended Complaint ("Proposed SAC"), which listed the plaintiff as Certicable LLC and alleged
the following claims: patent infringement under 35 U.S.C. § 271; trademark infringement under
the Lanham Act, 15 U.S.C. § 1114(a); false designation of origin under the Lanham Act, 15
U.S.C. § 1125(a); and trademark infringement under New York common law. (Proposed SAC ¶
1, ECF No. 25-1.) On November 1, 2023, I ordered Certicable, Inc. to "file a second amended
complaint by November 8, 2023," and adjourned the previously scheduled pre-motion
conference. (Elec. Order, Nov. 1, 2023.)

Certicable filed the SAC on November 8, 2023. (SAC.) The SAC identifies Certicable LLC as the plaintiff, adds Krawczyk as a defendant, and adds the claim for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(a). (*Id.* at 1.) On November 9, 2023, Magistrate Judge Steven I. Locke entered a scheduling order requiring the parties to file any motions to join new parties or amend the pleadings by August 7, 2024, or 90 days after the Court's claim construction order, whichever is earlier. (ECF No. 30 at 6.)

On November 29, 2023, Defendants answered the SAC, and P2P re-alleged the same seven counterclaims that they had alleged in response to the FAC. (ECF No. 37.) Defendants also filed a letter requesting a pre-motion conference on an anticipated motion to dismiss, arguing that the SAC should be dismissed because it is materially different from the Proposed SAC and fails to state a claim against Krawczyk. (ECF No. 36.) On December 8, 2023, Certicable opposed Defendants' request and filed its own letter requesting a pre-motion conference on a motion to dismiss P2P's counterclaims. (ECF Nos. 41, 42.) On December 21, 2023, Defendants responded. (ECF No. 43.) I waived the pre-motion conference requirement and adopted the parties' proposed schedule to brief the cross-motions to dismiss. (Elec. Order Jan. 17, 2024; Elec. Order, Jan. 23, 2024.)

On February 27, 2024, the parties timely filed their fully briefed motions. (ECF Nos. 57–58.) In support of their Motion to Dismiss the SAC, Defendants submitted a memorandum of law (Defs.' Br. ISO Mot. to Dismiss the SAC ("Defs.' Mot."), ECF No. 58-2), a redline comparing the SAC to the Proposed SAC (Defs.' Br. Ex. 1, ECF No. 58-3), and a reply brief (Defs.' Reply Br. ISO Mot. to Dismiss the SAC ("Defs.' Reply Br."), ECF No. 58-5). In opposition, Certicable submitted a brief. (Pl.'s Br. in Opp'n to Mot. to Dismiss the SAC ("Pl.'s Opp'n Br."), ECF No. 58-4.)

13

In support of its Motion to Dismiss P2P's Counterclaims, Certicable submitted a memorandum of law (Pl.'s Br. ISO Mot. to Dismiss Defs.' Countercls. ("Pl.'s Mot."), ECF No. 57-1), an assignment agreement in connection with the '605 Application (Berkowitz Decl. Ex. A, ECF No. 57-3), an assignment agreement in connection with U.S. Patent Application No. 16/266,977 (Berkowitz Decl. Ex. B, ECF No. 57-4), an assignment agreement in connection with the '844 Patent (Berkowitz Decl. Ex. C, ECF No. 57-5), and a reply brief (Pl.'s Reply Br. ISO Mot. to Dismiss Defs.' Countercls. ("Pl.'s Reply Br."), ECF No. 57-9). In opposition, P2P submitted a brief (P2P's Br. in Opp'n to Pl.'s Mot. to Dismiss Countercls. (P2P's Opp'n Br."), ECF No. 57-6), an employment agreement between Certicable and Krawczyk (P2P's Opp'n Br. Ex. 1, ECF No. 57-7), and an assignment agreement between Krawczyk and P2P (P2P's Opp'n Br. Ex. 2, ECF No. 57-8).

## LEGAL STANDARDS

"Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper when the district court lacks the statutory or constitutional power to adjudicate it." *Russo v. United States*, No. 22-cv-1869, 2024 WL 726884, at *1 (2d Cir. Feb. 22, 2024); *see also Green v. Dep't of Educ. of the City of New York*, 16 F.4th 1070, 1075 (2d Cir. 2021).[12] "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A district court may refer to evidence outside the pleadings to resolve a motion to dismiss for lack of subject matter jurisdiction. *Id.* "If the court determines at any time that it lacks subject-matter

_____

[12] Unless otherwise indicated, case quotations omit all internal quotation marks, brackets alterations, and citations.

14

jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A court considers a Rule 12(b)(1) challenge before other arguments for dismissal because dismissal for lack of subject matter jurisdiction renders a defendant's defenses and objections moot. *Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019); *see also Pressley v. City of New York*, No. 11-cv-03234, 2013 WL 145747, at *5 (E.D.N.Y. Jan. 14, 2013) ("A court faced with a motion to dismiss pursuant to both Rule 12(b)(1) and (b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction.").

   A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Green*, 16 F.4th at 1076–77 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In determining if a claim is sufficiently plausible to withstand dismissal," a court "accepts all factual allegations as true" and "draws all reasonable inferences in favor of the plaintiffs . . . ." *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 91 (2d Cir. 2021). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord We The Patriots USA, Inc. v. Connecticut Off. of Early Childhood Dev.*, 76 F.4th 130, 144 (2d Cir. 2023). While "detailed factual allegations" are not required, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

15

**DISCUSSION**

**I.   Defendants' Motion to Dismiss Certicable's SAC is Denied**

In their Motion to Dismiss Certicable's SAC, Defendants make two arguments in the alternative. The first argument is that the SAC's patent and trademark infringement claims should be dismissed as to Krawczyk because they lack sufficient facts to establish his personal liability. (Defs.' Mot. at 5–13.) The second argument is that the entire SAC should be dismissed because it is materially different than the Proposed SAC. (*Id.* at 14–15.) Because neither argument is persuasive, I deny Defendants' Motion to Dismiss Certicable's SAC.

A.   The Differences Between the Proposed SAC and SAC do not Merit Dismissal of the SAC

Defendants argue that the SAC should be dismissed because it is "materially different" from the Proposed SAC in that it contains "revamped infringement allegations," and adds Krawczyk as a defendant. (*Id.* at 14.) According to Defendants, "this 'bait and switch' is grounds for dismissal." (*Id.*) In opposition, Certicable argues that "Defendant does not allege any prejudice," and cannot because this case is "in its infancy and he has had ample time to respond."[13] (Pl.'s Opp'n Br. at 17–18.) To the extent the SAC was unauthorized, Certicable seeks leave to file the SAC. (*Id.* at 18.)

---

[13] Defendants' Motion to Dismiss is made on behalf of both P2P and Krawczyk. (*See* Defs.' Mot. at 1 ("Defendants . . . respectfully submit this memorandum of law in support of their motion to dismiss.").) But both Certicable's and Defendants' submissions occasionally refer to a single defendant. (*See, e.g.*, Pl.'s Opp'n Br. at 17–18 ("Defendant does not allege any prejudice . . . [n]or could he, as this case is in its infancy and he has had ample time to respond.").) Because the Motion to Dismiss is clearly made on behalf of both Defendants, I will ignore these typographical errors.

16

Defendants do not identify any rule or standard requiring dismissal of the SAC because it differs from the Proposed SAC. Defendants make a free-floating argument about a bait-and-switch, relying on a non-binding case in which the court granted dismissal of the portions of the plaintiff's amended complaint that differed from the proposed amended complaint. (Defs.' Mot. at 14 (citing *Fontrick Door, Inc. v. Ferguson*, No. 10-cv-0966, 2012 WL 268242, at *3–4, 6 (W.D.N.Y. Jan. 10, 2012), *R. & R. adopted*, 2012 WL 266927 (W.D.N.Y. Jan. 30, 2012).)[14]

"It is within the sound discretion of the court to grant or deny leave to amend." *Bank v. Alleviate Tax, LLC*, No. 23-cv-5457, 2024 WL 1332635, at *7 (E.D.N.Y. Mar. 28, 2024) (citing *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009)). Where a plaintiff seeks to amend after the time to amend as of right has passed, but before the deadline for amendment set by the court, a plaintiff must either request leave from the court or obtain the opposing party's written consent. *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021); Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) sets forth a lenient standard under which "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Unless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave

---

[14] Defendants raise three arguments on reply that they failed to raise in their moving brief in support of the Motion to Dismiss: (1) that the filing of the SAC prejudiced Krawcyzk "because he now has to fight additional claims pled against himself personally," (Defs.' Reply Br. at 9); (2) that Certicable should have filed a Rule 21 motion to add Krawczyk as a defendant and that such a motion would have been denied as untimely and lacking good cause because Certicable knew about Krawczyck's role within P2P before filing the action (*id.* at 10); and (3) that Certicable "exhibited bad faith" by "switching" the Proposed SAC for the SAC (*id.*). I will not consider these arguments raised for the first time on reply. *See United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003) ("We will not consider an argument raised for the first time in a reply brief."); *United States v. Giattino*, No. 90-cr-424, 2023 WL 4867564, at *4 (E.D.N.Y. July 31, 2023) (same).

to amend." *Adlife Mktg. & Commc'ns Co. v. Best Yet Mkt., Inc.*, No. 17-cv-02987, 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

Rule 21 governs the addition of new defendants in an amended pleading. *Capak v. Epps*, No. 18-cv-4325, 2020 WL 2543092, at *3 (S.D.N.Y. Apr. 7, 2020), *R. & R. adopted*, 2020 WL 2538998 (S.D.N.Y. May 19, 2020). The rule provides that "the court may at any time, on just terms, add or drop a party" on motion or sua sponte. Fed. R. Civ. P. 21. The same lenient standard for amending pleadings under Rule 15(a) applies to the joinder of parties under Rule 21. *Williams v. Town of Hempstead*, No. 16-cv-1992, 2017 WL 4712219, at *2 (E.D.N.Y. Oct. 18, 2017). The addition of a party lies within the district court's discretion. *See Momentum Luggage & Leisure Bags v. Jansport, Inc.*, No. 00-cv-7909, 2001 WL 58000, at *2 (S.D.N.Y. Jan. 23, 2001) ("Whether parties should be dropped from or added to an action presents problems of judicial administration over which the court, rather than the parties and their counsel, should maintain control at every stage of the litigation."); *id*. at *1 (collecting cases finding that Rule 21 governs the addition of a party even when the amended complaint is filed as of right).

Rules 21 and 15(a)(2) apply to Certicable's request for leave to file the SAC because it was made with the filing of Certicable's opposition brief on February 27, 2024—more than five months before the August 7, 2024 deadline for joining parties and amending the pleadings. (*See* ECF No. 30 at 6; Pl.'s Opp'n Br. at 18 ("Plaintiff respectfully requests leave to file the SAC.").)[15]

---

[15] Judge Locke set an amendment and joinder deadline of either August 7, 2024 or 90 days after the Court's claim construction order, whichever is earlier. (ECF No. 36 at 6.) August 7, 2024 is the deadline because the Court has not issued a claim construction order.

Case 2:23-cv-05322-NJC-SIL   Document 64   Filed 08/07/24   Page 19 of 44 PageID #: 1440

The differences between the Proposed SAC and the SAC center around the addition of Krawczyk as a defendant. (Defs.' Mot. Ex. 1, ECF No. 58-3.) The SAC alleges that Krawczyk developed the Accused Products, willfully and intentionally encouraged and induced P2P to infringe the '454 Patent,[16] personally directed and authorized the sale and/or importation of the Accused Products, directed and supervised their advertising and marketing, and directed and authorized the alleged infringement of the "Tinifiber" mark. (*See id.* ¶¶ 28–29, 33–35, 39.)

The addition of Krawcyzk as a defendant with the filing of the SAC around four months after the initiation of this action does not exhibit bad faith and will not cause undue delay. *See, e.g.*, *Zeller v. PDC Corp.*, No. 13-cv-5035, 2015 WL 1223719, at *2 (E.D.N.Y. Mar. 17, 2015) (finding no undue delay where plaintiff sought leave to amend within the timeframe proposed by the parties, and no bad faith absent facts showing that plaintiff sought to amend solely to gain a tactical advantage). Nor are Defendants prejudiced by the addition of Krawczyck. Defendants had ample time to respond to the filing of the SAC. Certicable filed the SAC on November 8, 2023, and Defendants filed their Answer and Counterclaims on November 29, 2023, after seeking and receiving an extension of time. (SAC; Answer & Countercls.; ECF Nos. 35, 39.)[17]

---

[16] Some new paragraphs in the SAC refer to the "'494 Patent." (Defs.' Mot. Ex. 1 ¶¶ 28, 32.) I understand them to refer to the '454 Patent, the subject of this action and the patent referenced in the rest of the SAC and Proposed SAC.

[17] In opposing Certicable's request for leave to file the SAC, Defendants rely on cases that are distinguishable. *See cf. Keller v. Lee*, No. 96-cv-4168, 1997 WL 436394 (S.D.N.Y. Aug. 4, 1997) (denying motion to amend after summary judgment and issuance of scheduling orders indicating the case was about to be put on the trial ready calendar); *Cnty. of Washington v. Ctys. of Warren & Washington Indus. Dev. Agency*, 2 F. App'x 71, 74 (2d Cir. 2001) (affirming denial of leave to amend where plaintiff waited more than four years to amend causing undue delay and prejudice to defendant); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990)

19

Additionally, for the reasons stated below, the filing of the SAC would not be futile because the SAC plausibly alleges Krawczyk's individual liability for induced patent infringement and trademark infringement. *See infra* Section I.B.

Accordingly, I deny Defendants' Motion to Dismiss the SAC on the basis that the pleading is materially different than the Proposed SAC. I will now address Defendants' argument that the SAC should be dismissed against Krawczyck because it fails to state a claim for patent or trademark infringement against him in his personal capacity. (Defs.' Mot. at 4.)

B. The SAC Plausibly Alleges that Krawczyk Induced P2P's Infringement of the '454 Patent[18]

Defendants argue that Certicable fails to state a claim for induced infringement against Krawczyk because the SAC's "generic allegations . . . add up to nothing more than Krawczyk being the CEO of a company accused of infringement." (*Id.* at 10.) According to Defendants, the "SAC provides no specific facts about what Krawczyk *did*, or *how* he directed/authorized P2P to do anything," and only alleges "that Krawczyk is the President and CEO of P2P," which does not plausibly allege specific intent to encourage infringement. (Defs.' Reply Br. at 5.)

In opposition, Certicable asserts that the SAC "adequately alleges both the knowledge and specific intent elements of an induced infringement claim." (Pl.'s Opp'n Br. at 7.) According

---

(denying motion to amend filed almost a year and a half after the initiation of litigation and after the commencement of dispositive motion practice).

[18] As Certicable clarifies, the SAC pleads only an induced patent infringement claim against Krawczyk—not a direct infringement claim. (Pl.'s Opp'n Br. at 5; *see, e.g.*, SAC ¶ 40 ("In violation of 35 U.S.C. § 271(b), Defendant Krawczyk, after having actual knowledge of the '197 Patent, *induced* others including Defendant P2P's customers to infringe the '454 Patent.") (emphasis added).) Therefore, I deny as moot the portion of Defendants' Motion to Dismiss that argues the SAC fails to state a claim for direct patent infringement. (*See* Defs.' Mot. at 5, 9.)

to Certicable, the SAC alleges that Krawczyk knew of the '454 Patent at least as early as the date of the first complaint in this action, and "likely" earlier because of "his writings about Plaintiff's Microfiber Assembly" and because the "Tinifiber" and "NanoFiber" products are "competing products in a single market" in which "competitors closely monitor each other's new products and technology." (*Id.*) Certicable argues that the SAC adequately pleads specific intent because it alleges that Krawczyk "personally participated in the design, manufacture, marketing, and sale of the infringing product, and that the infringement was deliberate and willful" and done "to unlawfully obtain the benefits of Plaintiff's industry and efforts, to harm Plaintiff, and to pass off the Accused Products as being Plaintiff's TINIFIBER fiber optic cables." (*Id.* at 7–8.)

Under Section 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). A plaintiff must plead that: (1) the patent was directly infringed, (2) the defendant knowingly induced infringement, and (3) the defendant possessed specific intent to encourage another's infringement. *Omega Pats., LLC v. CalAmp Corp.*, 920 F.3d 1337, 1349 (Fed. Cir. 2019). "Corporate officers who actively assist with their corporation's infringement may be personally liable for inducing infringement *regardless* of whether the circumstances are such that a court should disregard the corporate entity and pierce the corporate veil." *Glob. Traffic Techs. LLC v. Morgan*, 620 F. App'x 895, 907 (Fed. Cir. 2015). A plaintiff adequately pleads knowledge by alleging "that a defendant both knew of the patent and knew as well that the induced acts constitute patent infringement." *Pado, Inc. v. SG Trademark Holding Co. LLC*, 537 F. Supp. 3d 414, 425 (E.D.N.Y. 2021). But it is not essential to a claim of induced infringement that the defendant "had such knowledge before the lawsuit was filed." *Id.* (collecting cases).

Defendants' arguments go to the knowledge and specific intent elements of induced infringement. (Defs.' Mot. at 9 ("Inducement requires evidence of '*culpable conduct* with the *specific intent*' to infringe.").) As a result, I consider only whether Certicable has plausibly alleged that Krawczyk "knew that the induced acts constitute patent infringement" and "possessed specific intent to encourage another's infringement." *Bio-Rad Lab'ys v. Int'l Trade Comm'n*, 998 F.3d 1320, 1335 (Fed. Cir. 2021).

First, drawing all inferences in favor of Certicable, I find that the SAC plausibly alleges that Krawczyk knew that the induced acts constitute patent infringement. The SAC alleges that Krawczyk became aware of the '454 Patent at least as early as the date of service of the original complaint in this action (SAC ¶ 41) and "on information and belief, . . . encouraged and induced Defendant P2P to continue to sell the Accused Products despite being aware of the '494 Patent" (*id.* ¶ 28). "The weight of authority in this circuit indicates that a plaintiff may plead a defendant's knowledge and intent as of the date the suit was filed." *Pado*, 537 F. Supp. 3d at 426 (collecting cases). The SAC also alleges numerous facts that provide circumstantial evidence that Krawczyk knew of the '454 Patent and that the Accused Products infringed the '454 Patent. These include allegations that P2P and Certicable are competitors in the highly competitive fiber optic cable market; that competitors monitor each other's technology; and that the Accused Products infringe the '454 Patent, as shown on a chart with images supporting the allegation, which is attached to the SAC. SAC ¶¶ 18, 20, 23; Certicable Comparison Chart; *see Pado*, at 426 ("Courts have found that the likelihood of a defendant's knowledge of existing patents in the industry is heightened where the plaintiff and defendant are competitors in such a market.").

Second, Certicable has plausibly alleged that Krawczyk possessed specific intent to encourage P2P's infringement. To plead specific intent, a plaintiff must plausibly allege "(1) that

22

the defendant intended to cause the acts that constitute the direct infringement and (2) that the defendant knew or should have known that its actions would cause the direct infringement." *Id.* at 425. "Intent need not, and rarely can, be proven by direct evidence." *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 262 (E.D.N.Y. 2016) (citing *Merck & Co. v. Danbury Pharmacal, Inc.*, 873 F.2d 1418, 1422 (Fed. Cir. 1989)) (finding plaintiff alleged specific intent where the complaint included "highly detailed descriptions and depictions" of the patents and allegedly infringing items and allegations that defendant continued to sell infringing items despite receiving notice of the alleged infringement). Courts find that a plaintiff adequately pleads specific intent with allegations of "active steps taken to encourage direct infringement, such as advertising an infringing use or *instructing how to engage in an infringing use*." *Uni-Sys., LLC v. United States Tennis Ass'n*, 350 F. Supp. 3d 143, 168 (E.D.N.Y. 2018) (finding plaintiff alleged specific intent where complaint alleged that individual defendant sold components of a retractable roof after notice that the designs infringed the patents).

Here, Certicable alleges, on information and belief, that Krawczyk "developed the Accused Products on behalf of [] P2P" (SAC ¶ 29), "encouraged and induced [] P2P to continue to sell the Accused Products despite being aware of the '494 Patent" (*id.* ¶ 28), and

> personally directed and authorized the manufacture, use, offering for sale, sale and/or importation of the Accused Products, including by personally directing and supervising the construction and maintenance of websites from which the Accused Products are advertised, and by personally directing and supervising the preparing of advertising and marketing material used to sell the Accused Products

(*id.* ¶ 33). Courts have found similar allegations of a defendant's personal participation in the design, manufacture, marketing, and sale of an allegedly infringing product sufficient to plead specific intent to induce infringement. *See Pado*, 537 F. Supp. 3d at 426–27 (collecting cases).

Drawing all inferences in favor of Certicable, I find that the SAC plausibly alleges that Krawczyk possessed knowledge and specific intent to encourage P2P's infringement. I therefore deny the portion of Defendants' Motion that seeks to dismiss Certicable's induced infringement claim.

C.  35 U.S.C. § 299 Does not bar Certicable's Induced Patent Infringement Claim Against Krawczyk

Defendants argue that the SAC fails to plausibly allege an induced patent infringement claim against Krawczyk because 35 U.S.C. § 299 ("Section 299") bars joining him as a defendant in this action. (Defs.' Mot. at 12.) According to Defendants, if Certicable argues that P2P and Krawczyck "engaged in the same actions, Krawczyk cannot be held personally liable because he performed those acts as P2P's CEO," but "if Certicable asserts that Krawczyk and Certicable engaged in separate acts, then Section 299 bars Certicable from joining Krawczyk in this proceeding." (*Id.*) In opposition, Certicable argues that "Section 299 expressly **permits** joinder of P2P and its principal in the same action, since the allegations against Krawczyk arise out of the same transactions as P2P's, and involve common questions of fact." (Pl.'s Opp'n Br. at 13 (quotation marks omitted).)

Defendants' Section 299 argument is without merit. Section 299 states:

(a) Joinder of Accused Infringers.--With respect to any civil action arising under any Act of Congress relating to patents, other than an action or trial in which an act of infringement under section 271(e)(2) has been pled, parties that are accused infringers may be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, only if--
        (1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; and
        (2) questions of fact common to all defendants or counterclaim defendants will arise in the action.

24

35 U.S.C. § 299 (emphasis supplied). Here, the SAC alleges that Krawczyk induced P2P to infringe the '454 Patent through the manufacture, sale, advertisement, and marketing of the Accused Products. (*See generally* SAC.) In other words, the SAC alleges patent infringement claims against two parties (P2P and Krawczyk) arising out of the same transaction or occurrence (the manufacture, sale, advertisement, and marketing of the Accused Products) and sharing common questions of fact (whether the Accused Products infringe the '454 Patent). Therefore, Section 299 does not bar the joinder of Krawczyk as a defendant in this action, and I deny the portion of Defendants' Motion that seeks to dismiss the SAC as against Krawczyk on that basis.

### D. The SAC Plausibly Alleges Direct Liability Against Krawczyk for Trademark Infringement Under Federal and New York Law

Defendants argue that Certicable's federal and New York common law trademark claims should be dismissed against Krawczyk because the SAC fails to plausibly plead a basis for his personal liability. (Defs.' Mot. at 12–14.) According to Defendants, the personal liability of a corporate officer is limited to cases where the corporate officer is alleged to use an identical trademark without permission (counterfeiting), but the SAC does not allege that "NanoFiber" is identical to or a counterfeit of the "Tinifiber" mark. (*Id.* at 13–14.)

In opposition, Certicable asserts that there is no such limitation on personal liability for corporate officers in trademark cases. (Pl.'s Opp'n Br. at 14–17.) Rather, Certicable argues that the SAC plausibly alleges Krawczyk's personal liability because the allegations that he owns P2P and personally directed and authorized the creation, distribution, and use of the "NanoFiber" products plausibly allege that he was the moving, active, conscious force behind P2P's alleged infringement. (*Id.* at 14.)

Certicable is correct on the law. Under the Lanham Act and New York common law, "a corporate officer may be held directly liable for trademark infringement and unfair competition if the officer is a moving, active, conscious force behind the defendant corporation's infringement." *May Flower Int'l, Inc. v. Tristar Food Wholesale Co.*, No. 21-cv-02891, 2022 WL 4539577, at *3 (E.D.N.Y. Sept. 28, 2022) ("Because the elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims, the same analysis controls individual liability for plaintiff's state-law claims."). That standard is satisfied "when the officer was either the sole shareholder and employee, and therefore must have approved of the infringing act, or a direct participant in the infringing activity." *Mayes v. Summit Ent. Corp.*, 287 F. Supp. 3d 200, 212 (E.D.N.Y. 2018).

Here, Certicable has plausibly alleged that Krawczyk is a "moving, active, conscious force" behind P2P's alleged infringement. The SAC alleges that Krawzcyk is the owner, President, and CEO of P2P and is "essential" to its operations. (SAC ¶¶ 5, 11.) The SAC also alleges that Krawczyk developed the Accused Products; "is personally responsible for product development, product design, marketing, and sales" at P2P; and "personally directed and authorized the manufacture, use," sale, and importation of the Accused Products, "including by personally directing and supervising the construction and maintenance of websites" and preparation of "advertising and marketing material used to sell the Accused Products." (*Id.* ¶¶ 11, 29, 33.) Based on these allegations, and drawing all reasonable inferences in favor of Certicable, I find that the SAC plausibly alleges that Krawczyk is a direct participant in the alleged infringing activity.

For these reasons, the SAC plausibly alleges a basis for Krawczyk's direct liability for trademark infringement and false designation under the Lanham Act, 15 U.S.C. §§ 1114(a),

26

1125(a), and for trademark infringement under New York common law. *See Pado*, 537 F. Supp. 3d at 428. As a result, I deny the portion of Defendants' Motion that seeks to dismiss the trademark infringement claims against Krawczyk for lack of direct participation.

## II.   Certicable's Motion to Dismiss P2P's Counterclaims

P2P[19] alleges the following seven counterclaims against Certicable: (1) a correction of inventorship counterclaim under 35 U.S.C. § 256 ("Section 256"),[20] (2) a Declaratory Judgment Act counterclaim that P2P is not infringing the '454 Patent,[21] (3) a Declaratory Judgment Act counterclaim that the '454 Patent is invalid and/or unenforceable; (4) a tortious interference with business relations counterclaim under New York law, (5) an unjust enrichment counterclaim under New York law; (6) a Declaratory Judgment Act counterclaim that P2P is not infringing the "Tinifiber" trademark; and (7) a Declaratory Judgment Act counterclaim that the "Tinifiber" trademark is invalid. (*See generally* Countercls.) In its Motion to Dismiss P2P's Counterclaims, Certicable argues that P2P lacks standing to bring the correction of inventorship counterclaim, that the state law counterclaims are preempted by federal patent law, and that the Declaratory Judgment Act counterclaims are duplicative and fail to state a claim for relief. (*See generally* Pl.'s Br. ISO Mot. to Dismiss P2P's Countercls. ("Pl.'s Mot.").) For the following reasons, I

---

[19] The counterclaims are brought only by P2P, and not Krawczyk. (Countercls. at 1 (P2P "asserts the following counterclaims against" Certicable).)

[20] The correction of inventorship counterclaim is listed as Counterclaim II. (Countercls. ¶¶ 65–71.)

[21] The Declaratory Judgment Act counterclaim for non-infringement of the '454 Patent is listed as Counterclaim I. (Countercls. ¶¶ 60–64.)

grant Certicable's Motion to Dismiss P2P's Counterclaims and dismiss these counterclaims with prejudice.

A.  P2P Lacks Article III Standing to Assert the Correction of Inventorship Counterclaim

Under P2P's Section 256 claim, P2P seeks to name Krawczyk as an inventor on the '454 Patent. (Countercls. ¶ 71.)[22] Certicable argues for dismissal of P2P's correction of inventorship counterclaim for two reasons. First, Certicable maintains that P2P lacks standing to bring a counterclaim for correction of inventorship because Krawczyk assigned to Certicable's predecessor-in-interest all rights he may have had in the technology disclosed in the '605 Application, which issued as the '844 Patent. (Pl.'s Mot. at 8–11; Berkowitz Decl. Ex. A; Pl.'s Reply ISO Mot. to Dismiss P2P's Countercls. ("Pl.'s Reply Br.") at 4–6.)[23] Second, Certicable contends that P2P fails to plausibly allege facts showing how or when Krawczyk conceived of the elements highlighted in the correction of inventorship counterclaim—namely, the "non-interlocking armor being formed from a single spiral tube," and the "outer jacket having an inside diameter slightly greater than the outside diameter of the non-interlocking armor." (Pl.'s Mot. at 6–7; Countercls. ¶¶ 41–42; *see also* Pl.'s Reply Br. at 2–3.) Because P2P lacks standing

---

[22] Throughout the Counterclaims and its briefing, P2P suggests that Krawczyk should be a named inventor on the '562 Patent, the '589 Patent, and the '454 Patent. (*See, e.g.*, Countercls. ¶¶ 44–46.) The correction of inventorship claim, however, centers on including him as an inventor only on the '454 Patent. (*Id.* ¶ 71.)

[23] A district court may refer to evidence outside the pleadings to resolve a motion to dismiss for lack of subject matter jurisdiction. *Makarova*, 201 F.3d at 113.

to assert the correction of inventorship counterclaim, I do not reach the question of whether P2P plausibly alleges this counterclaim.[24]

Certicable argues that P2P lacks standing to bring a correction of inventorship counterclaim because Krawczyk assigned his rights to the technology disclosed in the '605 Application to Certicable, Inc. (Pl.'s Mot. at 9.) According to Certicable, this assignment covers the inventions disclosed in the '454 Patent because both the '605 Application and the '454 Patent repeat the subject matter of the '716 Application, which includes the same elements of Claim 1 of the '454 Patent, which P2P alleges that Krawczyk invented—namely the "non-interlocking armor being formed from a spiral tube," and an "outer jacket with an inside diameter slightly greater than the outside diameter of the non-interlocking armor." (*Id.* at 9–10.) Without a concrete financial interest in the '454 Patent, Certicable argues, P2P lacks standing to assert the correction of inventorship counterclaim.

In opposition, P2P argues that Krawczyk never agreed to assign his interest in the '454 Patent to Certicable, that his employment agreement did not obligate him to do so, and that he had no fiduciary duty to assign his rights. (P2P's Br. in Opp'n to Mot. to Dismiss Countercls. ("P2P's Opp'n Br.") at 9.) In fact, P2P asserts that Krawczyk assigned his rights in the '562 Patent, the 589 Patent, and the '454 Patent to P2P. (*Id.* (citing an assignment agreement between

---

[24] The parties dispute whether the plausibility pleading standard of Rule 8, Fed. R. Civ. P., or the heightened pleading standard of Rule 9(b), Fed. R. Civ. P., applies to the correction of inventorship counterclaim. (*Compare* Pl.'s Mot. at 6 with P2P's Opp'n Br. at 8–9.) Certicable relies on dicta in *Vapor Point LLC v. Moorhead*, which suggests that the heightened pleading standard of Rule 9(b) "*may*" apply, but did not apply that standard because the parties did not argue the point and the pleadings were deficient under the plausibility standard of Rule 8. No. 4:11-cv-4639, 2013 WL 12141365, at *4 n.3 (S.D. Tex. Oct. 1, 2013). Because I find that P2P lacks standing to bring the correction of inventorship counterclaim, I do no need to reach the issue of whether the Rule 8 or Rule 9(b) pleading standard applies.

Krawczyk and P2P (P2P's Opp'n Br. Ex. 2, ECF No. 57-8).) P2P also contends that Krawczyk's alleged assignment to Certicable of the rights to the inventions disclosed in the '605 Application does not cover Krawczyk's rights in the '454 Patent because the assignment agreement does not specifically identify the '454 Patent, and because the '454 Patent is not a "downstream substitution, division, and continuation thereof." (*Id.* at 10.) Finally, P2P argues that Certicable's standing argument relies on factual disputes not properly resolved on a motion to dismiss, including the meaning of "all said inventions" in the '844 Patent and whether Krawczyk had an implied obligation to assign his interest in the patents to Certicable. (*Id.* at 14.)

Section 256 "provides a cause of action to interested parties to have the inventorship of a patent changed to reflect the true inventors of the subject matter claimed in the patent." *Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1324 (Fed. Cir. 2009). Pursuant to Section 256, the named inventor of a patent may be corrected as follows:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error. . . .

> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256. A party satisfies the requirements of Article III standing to bring a Section 256 claim when it has a "concrete financial interest" in the patent. *Larson*, 569 F.3d at 1326. "When the owner of a patent assigns away all rights to the patent, neither he nor his later assignee has a concrete financial interest in the patent that would support standing in a correction of

inventorship action." *Trireme Med., LLC v. AngioScore, Inc.*, 812 F.3d 1050, 1053 (Fed. Cir. 2016).

Here, P2P lacks standing to bring the Section 256 claim because Krawczyk assigned his rights in the '454 Patent to Certicable. To assess this claim, I consider the '454 Patent; the '844 Patent, which resulted from Certicable's submission of the '605 Application; and exhibits to the Berkowitz Declaration.[25] I conclude that Krawczyk's assignment to Certicable of rights to inventions disclosed by the '605 Application clearly encompasses the inventions claimed in the '454 Patent for two independent reasons. (*See* Berkowitz Decl. Ex. A at 3.)

First, the '605 Application expressly incorporates the same inventions as the '454 Patent. The '605 Application and the '454 Patent both repeat the same subject matter as the '716 Application. The '605 Application is a continuation-in-part application of the '716 Application, which means that it "repeat[s] some substantial portion or all of the" '716 Application "and add[s] matter not disclosed in" the '716 Application. Manual of Patent Examining Procedure ("MPEP") § 201.08 Continuation-in-Part Application (R-07.2022). In fact, the '605 Application expressly incorporates by reference the entire '716 Application and the '562 Patent. ('844 Patent

---

[25] As noted above, the '454 Patent and the '844 Patent are both properly reviewed to evaluate Certicable's Motion to Dismiss because they are attached to the Counterclaims. *See supra* note 4 (noting that the '844 Patent is Exhibit 8 to the Counterclaims (ECF No. 37-8) and the '454 Patent is Exhibit 10 to the Counterclaims (ECF No. 37-10)).

at 6.) Similarly, the '454 Patent incorporates the '716 Application and '562 Patent in their entirety "to provide continuity of disclosure."[26] ('454 Patent at 5.)[27]

Second, the express language of the assignment agreement made in connection with the '605 Application covers all of the inventions in the '454 Patent. The assignment states that Krawczyk agreed to "sell, assign, and transfer" to Certicable, Inc. "the *entire right, title, and interest . . . to all said inventions* disclosed in said application . . . and in and to all Letters Patent . . . that may be granted for said inventions." (Berkowtiz Decl. Ex. A at 3 (emphasis supplied).) The '605 Application discloses *the same inventions* articulated in Claim 1 of the '454 Patent that P2P highlights in its counterclaim—namely the "non-interlocking armor being formed from a spiral tube," and an "outer jacket with an inside diameter slightly greater than the outside diameter of the non-interlocking armor." ('844 Patent at Col. 1:46–61, 5:13, Claim 1, Claim 2.) Because the '605 Application discloses the same inventions that are covered by the '454 Patent, the assignment also covers the inventions in the '454 Patent.[28] As a result, Krawczyk assigned

---

[26] In opposing the conclusion that the 605 Application expressly incorporates the same inventions as the '454 Patent, P2P relies on *Alpha One Transporter, Inc. v. Perkins Motor Transp., Inc.*, but that case is distinguishable. No. 13-cv-2662, 2014 WL 4537012, at *3 (S.D. Cal. Sept. 11, 2014). In *Alpha One*, the court found that an assignment of an earlier provisional patent did not cover a later continuation-in-part application because that later application included new subject matter not included in the earlier provisional patent. *Id.* By contrast, here, the '605 Application assigned to Certicable is **later than** the '716 Application and contains the same subject matter as the '716 Application.

[27] The '454 Patent is a continuation of the '716 Application, which means that it *only* contains the same subject matter included in the '716 Application. MPEP § 201.07.

[28] Because the '605 Application clearly discloses the same inventions that are covered by the '454 Patent, I am not persuaded that there is a factual dispute as to the meaning of the term "all said inventions" in the assignment agreement, as P2P argues, or that P2P's allegation that

32

his rights in the '454 Patent to Certicable, as the successor-in-interest to Certicable, Inc. There is no ambiguity on this issue.[29]

Even if, as P2P alleges, Krawczyk had assigned his rights in the '454 Patent to P2P, P2P—as the later assignee—would still lack a concrete financial interest in the '454 Patent sufficient to support standing to bring a correction of inventorship counterclaim.[30] *Trireme Med.*, 812 F.3d at 1053 ("When the owner of a patent assigns away all rights to the patent, neither he nor his later assignee has a concrete financial interest in the patent that would support standing in a correction of inventorship action.").

For all of these reasons, P2P lacks Article III standing to assert the correction of inventorship counterclaim. Therefore, I grant Certicable's Motion to Dismiss the correction of inventorship counterclaim and do not reach the question of whether P2P plausibly alleges this counterclaim. *See Faehner v. Webcollex, LLC*, No. 21-cv-1734, 2022 WL 500454, at *1 n.1 (2d

_____

Krawczyk asked his co-founders to be named as an inventor on the '562 Patent has any legal impact on my standing ruling. (P2P's Opp'n Br. at 4, 14.)

[29] This case is therefore distinguishable from others where there is ambiguity as to which inventions are covered by an assignment agreement. *See, e.g.*, *Euclid Chem. Co. v. Vector Corrosion Techs., Inc.*, 561 F.3d 1340, 1343–44 (Fed. Cir. 2009) (finding assignment ambiguous as to whether it applied to multiple patents where it purported to assign interest in the inventor's "applications" (plural) but "issued U.S. patent" (singular)); *Gellman v. Telular Corp.*, No. 07-cv-282, 2010 WL 5173213, at *5 (E.D. Tex. Dec. 14, 2010), *aff'd*, 449 F. App'x 941 (Fed. Cir. 2011) (finding plaintiff failed to prove assignment where the purported assignment did "not refer to the patent in suit by either name or number and appeared, instead, to refer to a different patent application that was abandoned after final rejection").

[30] Although P2P alleges that Krawczyk assigned to P2P an undivided joint interest in the '562 Patent, the '589 Patent, and the '454 Patent, I limit discussion of this argument to the '454 Patent because that is the only patent identified in P2P's correction of inventorship counterclaim. (Countercls. ¶¶ 44, 46, 65–71.)

Cir. Feb. 18, 2022) (observing that a court must determine that it has subject matter jurisdiction before proceeding to a merits analysis).

B. <u>The Tortious Interference with Business Relations Counterclaim is Preempted by Federal Patent Law or, in the Alternative, is Implausible</u>

P2P alleges that Certicable injured P2P's business relationship with "many" customers, including Legrand, by: (1) informing Legrand, without a reasonable basis and in bad faith, that P2P and/or Krawczyk were infringing Certicable's patents, and (2) "initiat[ing] this action in bad faith" "to frighten P2P's customers" and "for the purpose of destroying P2P's business." (Countercls. ¶¶ 59, 79–82.) Certicable argues that P2P's counterclaim for tortious interference with business relations should be dismissed because it is preempted by federal patent law and because P2P fails to plausibly plead the elements of the counterclaim. (Pl.'s Mot. at 11–15; Pl.'s Reply Br. at 7–8.) More specifically, Certicable argues that P2P fails to plausibly allege (1) that Certicable acted solely with malice in informing Legrand that it considered P2P to be infringing one of Certicable's patents, (2) that P2P does not infringe Certicable's other patents, and (3) that Legrand would have entered into an economic relationship with P2P but for Certicable's purported interference. (Pl.'s Mot. at 13.) In opposition, P2P argues that the counterclaim is not preempted because the core of the claim is about patent ownership, which is a state law issue. (P2P's Opp'n Br. at 15.) P2P also argues that the tortious interference with business relations counterclaim plausibly states a claim for relief by alleging that Certicable acted with bad faith for the purpose of destroying P2P's business and that Legrand chose not to do business with P2P as a result of Certicable's conduct. (*Id.* at 17–18.)

Under the Supremacy Clause of the U.S. Constitution, U.S. Const. art. VI, cl. 2, "state laws that conflict with federal law are without effect." *Merck Sharp & Dohme Corp. v. Albrecht*,

587 U.S. 299, 314 (2019). "Federal Circuit law governs whether federal patent law preempts a state law claim." *SpeedFit LLC v. LifeCore Fitness, Inc.*, No. 22-cv-3140, 2023 WL 199595, at *3 n.2 (S.D.N.Y. Jan. 17, 2023) (citing *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005)). Certicable's preemption argument implicates conflict preemption, in which a state law claim is preempted if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979).

"To determine whether . . . state law torts are in conflict with federal patent law and accordingly preempted, [courts] assess a defendant's allegedly tortious conduct." *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336 (Fed. Cir. 1998), *overruled in part on other grounds by Midwest Ind. Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1360–61 (Fed. Cir. 1999); *see also SpeedFit*, 2023 WL 199595, at *3. "If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law." *Hunter Douglas*, 153 F.3d at 1335. By contrast, federal patent law will not preempt a state law cause of action if the state law claims: (1) "include additional elements not found in the federal patent law cause of action" and (2) "are not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law." *Amgen Inc. v. Sandoz Inc.*, 877 F.3d 1315, 1329–30 (Fed. Cir. 2017).

Under *Hunter Douglas*, P2P's counterclaim for tortious interference with business relations is preempted by federal patent law. P2P alleges that Certicable interfered with P2P's relationship with "many of its customers, including Legrand . . . , ***by falsely claiming that P2P and/or Krawczyk were infringing Certicable's patent(s)***." (Countercls. ¶ 79 (emphasis

35

supplied).) By its plain terms, the tortious interference counterclaim targets Certicable's alleged failure to name Krawczyk as an inventor of the '454 Patent: "Certicable had no reasonable basis or legitimate claim for informing Legrand about P2P's alleged infringement *because Certicable knowingly and intentionally failed to name Krawczyk as an inventor on at least the '454 Patent*." (*Id*. ¶ 81 (emphasis supplied).) P2P fails to allege any other conduct in which Certicable engaged apart from its effort to enforce the '454 Patent, which is the subject of Count I of the SAC. Because P2P's tortious interference with business relations counterclaim is predicated solely upon the inventorship of the '454 Patent, the counterclaim is preempted by federal patent law. *See Hunter Douglas*, 153 F.3d at 1335; *see, e.g.*, *SpeedFit*, 2023 WL 199595, at *3–4 (finding unjust enrichment claim and copying claim under N.Y. General Business Law § 349 preempted because they were "predicated solely upon Defendants' alleged" patent infringement).

Even if the tortious interference with business relations counterclaim were not preempted by federal law, P2P fails to state such a counterclaim here. Under New York law, a party alleging tortious interference with business relations must plausibly allege that (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted with the "sole purpose of harming the plaintiff or by using unlawful means"; and (4) there was resulting injury to the business relationship. *N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 953 N.Y.S.2d 96, 108 (2d Dep't 2012).

P2P fails to plausibly allege a counterclaim for tortious interference with business relations because it fails to allege facts supporting the third element of the counterclaim: that Certicable acted with the "sole purpose" of harming P2P or by using unlawful means. *Id.* P2P alleges that Certicable harmed P2P's relationship with Legrand by: (1) acting "in bad faith" to "inform[] Legrand about P2P's alleged [patent] infringement" without having a "reasonable

basis" for making such a statement, and (2) "initiat[ing] this action in bad faith for the purpose of destroying P2P's business in an attempt to eliminate P2P as a competitor." (Countercls. ¶¶ 79, 81–82.) These allegations fail to plausibly allege the third element for three independent reasons.

First, P2P does not allege that Certicable informed Legrand of P2P and/or Krawczyk's alleged infringement for the sole purpose of harming P2P or by using unlawful means. (*See generally* Countercls.) The Counterclaims are silent as to Certicable's purpose in allegedly informing Legrand of the alleged infringement. Even drawing all inferences in favor of P2P, as required when assessing Certicable's Motion to Dismiss P2P's Counterclaims, it is implausible that Certicable's alleged statement to Legrand was made solely to harm P2P or by using unlawful means when it was made in the context of Certicable's broader effort to enforce the '454 Patent.

Second, P2P does not allege that Certicable filed a patent infringement lawsuit solely "to frighten P2P's customers." (Countercls. ¶ 59.) To the extent it does, however, such an allegation is implausible, even when drawing inferences in favor of P2P, and the allegation that "Certicable initiated this action in bad faith for the purpose of destroying P2P's business," is conclusory. (*Id.* ¶¶ 59, 82.)

Third, Certicable's initiation of this action is not actionable conduct that can form the basis of a tortious interference with business relations counterclaim. "The *Noerr-Pennington* doctrine generally immunizes from liability a party's commencement of a prior court proceeding" with the exception of "sham" litigation that is "objectively baseless" and "intended to cause harm to the defendant through the use of governmental *process*—as opposed to the *outcome* of that process." *T.F.T.F. Cap. Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90, 93 (2d Cir. 2002); *see Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 475 (S.D.N.Y. 2021)

(finding that a counterclaim for tortious interference "fails to allege improper conduct because [plaintiff] is shielded from liability for filing the complaint by the *Noerr-Pennington* doctrine").

For all of these reasons, I dismiss the tortious interference with business relations counterclaim as preempted by federal patent law or, in the alternative, for P2P's failure to state a claim.

C. The Unjust Enrichment Counterclaim is Preempted by Federal Patent Law or, in the Alternative, is Implausible

Certicable argues that P2P's counterclaim for unjust enrichment under New York law should be dismissed because it is preempted by federal patent law and because it fails to plausibly state a claim for relief. (Pl.'s Mot. at 13–14; Pl.'s Reply Br. at 7–8.) More specifically, Certicable argues that P2P fails to plausibly allege facts showing that Krawczyk was not required to assign the '454 Patent to Certicable or that he had an expectation of receiving additional compensation for contributing to inventions during his employment at Certicable. (Pl.'s Mot. at 14.) In opposition, P2P argues that it is not required to plausibly allege any obligation to assign and that Certicable's argument only applies where a party has pled duplicative theories of breach of contract and unjust enrichment, which is not the case here. (P2P's Opp'n Br. at 17.)

Under *Hunter Douglas*, P2P's unjust enrichment counterclaim is also preempted by federal law because the counterclaim is about the inventorship of the '454 Patent. P2P alleges that "Krawczyk is an inventor of at least some of the claimed subject matter in the '454 Patent" with rights to the patented invention, and "Certicable was enriched at Krawczyk's expense" because "a significant portion of the investment by Columbia River Partners was tied to the value of [the Certicable Patents] . . . on which Krawczyk should be a named inventor." (Countercls. ¶¶ 86–87, 89–90.) Like the tortious interference with business relations

38

counterclaim, the unjust enrichment counterclaim is predicated solely upon the inventorship of the '454 Patent and is therefore preempted by federal patent law. *See, Hunter Douglas*, 153 F.3d at 1335; *see e.g.*, *SpeedFit*, 2023 WL 199595, at *3–4.

Even if the unjust enrichment counterclaim were not preempted by federal law, P2P fails to state such a counterclaim here. A party alleging unjust enrichment must plausibly allege "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Columbia Mem'l Hosp. v. Hinds*, 192 N.E.3d 1128, 1137 (N.Y. 2022). In this case, P2P would have to plausibly allege that Certicable was enriched at P2P's expense and that it is against equity and good conscience to permit Certicable to retain the benefits of the '454 Patent, including the investment by Columbia River Partners. But P2P fails to plausibly allege that Certicable was enriched at P2P's expense because it has not plausibly alleged that P2P has a right to, or an interest in, the Certicable Patents.

P2P alleges that Krawczyk should be named as an inventor on the ***'454 Patent*** because prior to the application that led to the ***'562 Patent***, he participated in discussions with Certicable's patent attorney and provided technical information regarding armored fiber optic cables, his thoughts on what subject matter could be claimed, and guidance on what made the technology new. (Countercls. ¶ 19.) P2P further appears to allege that because Krawczyk should be a named inventor on the '454 Patent and because Krawczyk never assigned his rights in that patent to Certicable but instead assigned them to P2P, Certicable is liable to Krawczyk for benefits it unjustly obtained by failing to name Krawczyk as an inventor on the '454 Patent. (*Id.* ¶¶ 85–91.) But these allegations do not plausibly allege that Krawczyk should be a named

39

inventor on the '454 Patent,[31] let alone that P2P—rather than Certicable, Krawczyk's employer at the time—should receive the benefits of Krawczyk being a named inventor of the '454 Patent. Nor do these allegations plausibly allege that it would be against equity and good conscience to permit Certicable to retain benefits from the '454 Patent.

For all of these reasons, I dismiss the unjust enrichment counterclaim as preempted by federal patent law or, in the alternative, for P2P's failure to state a claim.

### D. The Declaratory Judgment Counterclaims are Dismissed as Duplicative

Certicable argues that P2P's four declaratory judgment counterclaims should be dismissed because they are mirror images of Certicable's own infringement claims, offer nothing beyond P2P's affirmative defenses, and lack factual allegations sufficient to plausibly state a claim. (Pl.'s Mot. at 14–16; Pl.'s Reply at 8–10.) In opposition, P2P argues that the declaratory judgment counterclaims should not be dismissed because they are compulsory, commonplace, and assert P2P's affirmative rights to protect its name and reputation. (P2P's Opp'n Br. at 19–20.)

The decision to exercise declaratory jurisdiction "is within the broad discretion of the trial court." *Gorfinkel v. Ralf Vayntrub, Invar Consulting Ltd.*, No. 11-cv-5802, 2014 WL 4175914, at *6 (E.D.N.Y. Aug. 20, 2014) (citing *Muller v. Olin Mathieson Chem. Corp.*, 404 F.2d 501, 505 (2d Cir. 1968)). "A district court must address a declaratory judgment claim where (1) the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy

---

[31] This plausibility analysis centers only on assessing the unjust enrichment claim and not P2P's Section 256 correction of inventorship claim, which is dismissed for lack of standing as discussed above. *See supra* Section II.A.

giving rise to the proceeding." *Id.* (citing *Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 597 (2d Cir. 1996), *abrogated on other grounds by MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, (2007)). But courts properly dismiss a declaratory judgment claim as duplicative if it simply mirrors a primary claim raised by another party. *Id.* (citing *Wilton v. Seven Falls Co.*, 515 U.S. 227, 282–83 (1995) (holding that a district court can decline to exercise declaratory jurisdiction where "the claims of all parties in interest can satisfactorily be adjudicated" in another, preexisting proceeding)). "A counterclaim seeking a declaratory judgment may be dismissed if it is duplicative of the counterclaimants' affirmative defenses, does not broaden the scope of the dispute, or would not present a live controversy once the plaintiffs' claims have been resolved on the merits." *Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-cv-00407, 2022 WL 1665453, at *8 (E.D.N.Y. May 25, 2022).

Here, P2P's four declaratory judgment counterclaims are duplicative of Certicable's claims and its own affirmative defenses. Counterclaim I is for a declaratory judgment of non-infringement of the '454 Patent (Countercls. ¶¶ 60–64); this mirrors Certicable's claim for infringement of the '454 Patent (SAC ¶¶ 36–45) and P2P's second affirmative defense of non-infringement of the '454 Patent (Answer at 6). Counterclaim III is for a declaratory judgment of invalidity and/or unenforceability of the '454 Patent (Countercls. ¶¶ 72–77); this mirrors P2P's third and fourth affirmative defenses (Answer at 6–7). Counterclaim VI is for a declaratory judgment of non-infringement of the "Tinifiber" trademark (Countercls. ¶¶ 92–104); this mirrors Certicable's claims for federal trademark infringement (SAC ¶¶ 46–60) and common law trademark infringement (*id.* ¶¶ 61–66) and P2P's ninth affirmative defense of non-infringement of the "Tinifiber" trademark (Answer at 7). Counterclaim VII is for a declaratory judgment of invalidity of the "Tinifiber" trademark (Countercls. ¶¶ 105–10); this mirrors Certicable's claims

41

for federal trademark infringement (SAC ¶¶ 46–60) and common law trademark infringement (*id.* ¶¶ 61–66) and P2P's tenth affirmative defense of invalidity of the "Tinifiber" trademark. (Answer at 8).

Thus, each of P2P's four declaratory judgment counterclaims is duplicative of one of Certicable's claims in the SAC and/or one of P2P's own affirmative defenses to those claims.[32] The declaratory judgment counterclaims therefore do not "broaden the scope of the dispute or present a live controversy once [Certicable's] claims have been resolved on the merits." *Alcon Vision*, 2022 WL 1665453, at *8. Therefore, I grant Certicable's Motion to Dismiss Counterclaims I, III, VI, and VII.

E.  P2P's Counterclaims are Dismissed with Prejudice

Certicable argues that P2P's counterclaims should be dismissed with prejudice because it has failed to cure the deficiencies Certicable raised in its first and second pre-motion letters, and because amendment would be futile. (Pl.'s Mot. at 16–17; Pl.'s Reply Br. at 10.) In opposition, P2P argues that the court, rather than another party, puts the claimant on notice of deficiencies in its pleadings; that Certicable's Motion to Dismiss contains arguments not raised in the pre-

---

[32] P2P's argument to the contrary relies on cases that are distinguishable. In *Ruckus Wireless, Inc. v. Harris Corp.*, the court applied the first-to-file rule to dismiss the plaintiff's Declaratory Judgment Act claim and order the plaintiff to re-file it as a counterclaim to the defendant's previously-filed complaint in the Middle District of Florida. No. 11-cv-01944, 2012 WL 588792, at *2 (N.D. Cal. Feb. 22, 2012). By contrast, P2P's counterclaims are already in the same action as Certicable's SAC. In *Avante International Technology, Inc. v. Hart Intercivic, Inc.*, the court dismissed four of the plaintiff's claims for declarations of invalidity, unenforceability, and non-infringement because "the peculiar circumstances" of the case indicated "no reason to believe that" the defendant intended to pursue patent litigation against the plaintiff because the parties had previously stipulated to the dismissal of defendant's claims for infringement of those patents. No. 08-cv-832, 2009 WL 2431993, at *3–4 (S.D. Ill. July 31, 2009). Unlike the parties in *Avante*, Certicable and P2P continue to litigate infringement of the '454 Patent.

motion letters; and that Certicable failed to show "beyond doubt" that amendment would be futile. (P2P's Opp'n Br. at 22–23.) P2P argues that "the extensive facts and allegations set forth in P2P's counterclaims confirm that they are far from futile." (*Id.* at 23.)

As noted above, under Rule 15(a), a party may amend a pleading by right within twenty-one days of serving it on the opposing party or within twenty-one days of service by the opposing party of a responsive pleading or motion under Rule 12(b). Fed. R. Civ. P. 15(a)(1). If those deadlines have passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires," but is not required to permit amendment where amendment would be futile. Fed. R. Civ. P. 15(a)(2); *Sacerdote*, 9 F.4th at 115.

Here, P2P has missed the deadline to amend as of right under Rule 15(a)(1) and has not sought leave to amend in its motion papers, and the deadline to do so is today. *See* ECF No. 30 at 6; *supra* note15. Indeed, P2P appears to stand on its pleadings. (*See* P2P's Opp'n Br. at 23 ("the extensive facts and allegations set forth in P2P's counterclaims confirm that they are far from futile.").) Moreover, because I have found that P2P lacks standing to assert the correction of inventorship counterclaim, that the tortious interference with business relations and unjust enrichment counterclaims are preempted, and that the declaratory judgment counterclaims are duplicative of Certicable's claims or P2P's affirmative defenses, amendment would be futile and dismissal with prejudice is proper.[33]

---

[33] P2P's argument that Certicable's Motion to Dismiss the Counterclaims contains new arguments not present in its pre-motion letters is unpersuasive. P2P argues that the pre-motion letters did not argue that P2P failed to state a claim for its Declaratory Judgment Act

**CONCLUSION**

For the reasons set forth above, the Court denies Defendants' Motion to Dismiss

Certicable's SAC (ECF No. 58) and grants Certicable's Motion to Dismiss P2P's Counterclaims

with prejudice (ECF No. 57). The Clerk of the Court is directed to amend the caption of this case

to reflect the caption of this Opinion and Order.

Dated: Central Islip, New York
August 7, 2024

                                       _/s/ Nusrat J. Choudhury_
                                       NUSRAT J. CHOUDHURY
                                       United States District Judge

---

counterclaims and state law counterclaims. (P2P's Opp'n Br. at 22.) Both pre-motion letters state that the "state law claims have no factual support" and "are preempted by federal law." (ECF No. 26 at 3; ECF No. 43 at 3.) Both pre-motion letters also state that P2P's Declaratory Judgment Act counterclaims "mirror" Certicable's infringement claims. (ECF No. 26 at 3; ECF No. 43 at 3.) That Certicable also argued in its Motion that P2P's Declaratory Judgment Act counterclaims lack factual allegations sufficient to state a claim does not render the Motion defective. P2P's arguments are unpersuasive in light of the fact that the Declaratory Judgment Act counterclaims do nothing more than mirror Certicable's infringement claims or repeat P2P's own affirmative defenses.