**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Certicable Inc. and Certicable LLC,<br><br>          Plaintiffs,<br><br>  -v-<br><br>Point 2 Point Communications Corporation and Roman Krawczyk,<br><br>        Defendants. | |
| Point 2 Point Communications Corporation,<br><br>       Counter Claimant,<br><br>  -v-<br><br>Certicable Inc. and Certicable LLC,<br><br>       Counter Defendants. | 2:23-cv-5322<br>(NJC) (SIL) |

**OPINION AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Pursuant to Local Civil Rule 6.3, Defendant Point 2 Point Communications Corporation ("P2P") has filed a Motion for Reconsideration of my August 7, 2024 order dismissing its seven counterclaims with prejudice ("Order," ECF No. 64). (Mot. Reconsid., ECF No. 66; P2P's Mem. Supp. Mot. Reconsid., ECF No. 66-1.) For the following reasons, I grant the Motion for Reconsideration.

# BACKGROUND

The Order is incorporated by reference, and familiarity with it is presumed. *See*, *e.g.*, *Williams v. Nat'l R.R. Passenger Corp. (Amtrak)*, No. 18-cv-7070, 2019 WL 3423267, at *1 (S.D.N.Y. July 30, 2019) (incorporating by reference prior recitations of procedural history and facts).[1] Consequently, I recite only those facts necessary to resolve the Motion for Reconsideration.

This case arises out of a dispute over U.S. Patent No. 10,444,454 ("'454 Patent"), which describes the design and assembly of an armored fiber optic cable. (Second Am. Compl. ("SAC") ¶ 15, ECF No. 28.)[2] Plaintiff Certicable LLC ("Certicable") alleges that P2P and Defendant Roman Krawczyk ("Krawczyk," collectively, "Defendants") have infringed and continue to infringe the '454 Patent in violation of 35 U.S.C. § 271 ("Section 271"). (SAC ¶¶ 1, 38.) Certicable also brings the following claims against P2P for infringement of its "Tinifiber" trademark: trademark infringement under the Lanham Act, 15 U.S.C. § 1114(a); false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); and common law trademark infringement. (SAC ¶ 2.) Defendants moved to dismiss with prejudice the claims in the SAC against Krawczyk pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") or, in the alternative, to dismiss the SAC in its entirety because it is materially different from the proposed SAC that Certicable sought leave to file. (ECF No. 58-1.)

P2P also brought seven counterclaims against Certicable: (1) a correction of inventorship counterclaim under 35 U.S.C. § 256 ("Section 256"); (2) a counterclaim under the Declaratory

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, brackets, and citations.

[2] All defined terms have the same meaning as in the Order.

Judgment Act, 28 U.S.C. § 2201, that P2P is not infringing the '454 Patent; (3) a Declaratory

Judgment Act counterclaim that the '454 Patent is invalid and/or unenforceable; (4) a tortious

interference with business relations counterclaim under New York common law; (5) an unjust

enrichment counterclaim under New York common law; (6) a Declaratory Judgment Act

counterclaim that P2P is not infringing the "Tinifiber" trademark; and (7) a Declaratory

Judgment Act counterclaim that the "Tinifiber" trademark is invalid. (*See generally* Countercls.,

ECF No. 37.) Certicable moved to dismiss P2P's counterclaims under Rule 12(b)(1) and (b)(6)

with prejudice. (Certicable's Mot. Dismiss Countercls., ECF No. 57; *see also* Certicable's Mem.

Supp. Mot. Dismiss Countercls., ECF No. 57-1; P2P's Opp'n Mot. Dismiss Countercls., ECF

No. 57-6; Certicable's Reply Supp. Mot. Dismiss Countercls., ECF No. 57-9.)

On August 7, 2024, I denied Defendants' motion to dismiss the SAC and granted

Certicable's Motion to Dismiss all seven counterclaims with prejudice. (*See generally* Order.)

Regarding the counterclaims, I found the following: (1) that P2P lacks Article III standing to

assert the correction of inventorship counterclaim (*id.* at 28–34); (2) that the tortious interference

with business relations and unjust enrichment counterclaims were preempted by federal patent

law or, in the alternative, were implausible (*id.* at 34–40); (3) that the declaratory judgment

counterclaims were duplicative mirror images of Certicable's claims and thus did not present a

live controversy under the Declaratory Judgment Act (*id.* at 40–42); and (4) that amendment of

the counterclaims would be futile (*id.* at 43).

On August 21, 2024, P2P timely filed the Motion for Reconsideration. *See* Local Rule 6.3

(requiring a motion for reconsideration to be served within fourteen days of the issuance of the

order being challenged); Mot. Reconsid. That same day, Krawczyk filed an answer on his behalf

only, responding to Certicable's SAC. (Krawczyk's Answer, ECF No. 65.) Krawczyk's answer

to the SAC does not contain any counterclaims, although in P2P's Motion for Reconsideration, P2P asserts that if I grant reconsideration, "Defendants will submit an amendment with any allowed [c]ounterclaims." (P2P's Mem. Supp. Mot. Reconsid. at 1 n.1.) On September 4, 2024, Certicable opposed the Motion. (Certicable's Opp'n Mot. Reconsid., ECF No. 67.) On September 11, 2024, P2P filed a reply in support of the Motion. (P2P's Reply Supp. Mot. Reconsid., ECF No. 68.)

## LEGAL STANDARDS

### I.    Motion for Reconsideration

The standard for granting a motion for reconsideration is "strict." *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024). The decision to grant or deny the motion for reconsideration rests within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009). "A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013). In other words, "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court." *Commerzbank AG*, 100 F.4th at 337. A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). A party's "disagreement" with the court's "explication of the relevant legal standards and application of the standards to the facts of the case" does not justify the grant of a motion for reconsideration.

*McGraw-Hill Global Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 398 (S.D.N.Y. 2018). The "manifest injustice" standard affords the district court substantial discretion and is rarely met. *See Chitkara v. N.Y. Tel. Co.*, 45 F. App'x 53, 55 (2d Cir. 2002).

## DISCUSSION

In its Motion, P2P seeks reconsideration of two of the Order's holdings. First, P2P asks me to reconsider the Order's dismissal of its Section 256 correction of inventorship counterclaim *with prejudice* on the ground that I overlooked controlling Second Circuit authority requiring dismissals for lack of subject matter jurisdiction to be *without prejudice*. (P2P's Mem. Supp. Mot. Reconsid. at 2–3.) Second, P2P asks me to reconsider the Order's dismissal of its declaratory judgment counterclaims for non-infringement and invalidity *with prejudice*. (*Id.* at 3–4.) In its opening brief, P2P asserts that I erred in concluding that these claims were "duplicative of Certicable's claims" and would not "present a live controversy once Certicable's claims were resolved on the merits," in particular because Certicable could voluntarily "dismiss its own claims without prejudice . . . , continue broadcasting its assertions that P2P infringes, and continue threatening P2P's customers with infringement." (*Id.* at 3 (citing Order at 41–42).) Thus, while P2P "disagrees that these claims should have been dismissed" in the first place, it argues that, at a minimum, I should not have dismissed these claims *with prejudice*. (*Id.* at 3–4.) On reply, P2P reiterates these points and more explicitly argues that I should not have dismissed the declaratory judgment counterclaims *at all*. (P2P's Reply Supp. Mot. Reconsid. at 5.)

For the reasons set forth below, I grant P2P's Motion with respect to both of these issues, as follows:

(1) Concerning P2P's correction of inventorship counterclaim under Section 256, I hold that the Order erred in dismissing this claim *with prejudice* and amend the Order to dismiss this claim *without prejudice*. I do not, however, reconsider the Order's denial of leave to amend the correction of inventorship counterclaim.

(2) Concerning P2P's declaratory judgment counterclaims, I hold that these claims should not have been dismissed under Rule 12(b)(1) because they are not mirror images of Certicable's claims, and, accordingly, I reinstate those claims.

(3) Having reinstated the declaratory judgment claims, I now reach Certicable's Motion to Dismiss these claims under Rule 12(b)(6). As to Counterclaim I (non-infringement of the '454 Patent), I find that P2P has failed to state a claim and, accordingly, I dismiss that counterclaim with prejudice. As to Counterclaims III (invalidity and/or unenforceability of the '454 Patent), VI (non-infringement of the "Tinifiber" trademark), and VII (invalidity of the "Tinifiber" trademark), I find that P2P has plausibly alleged these counterclaims, and, therefore, I deny dismissal.

I.    **Whether Dismissal of the Correction of Inventorship Claim Should Have Been Without Prejudice**

A.    The Order

The Order found that P2P lacks Article III standing to bring the correction of inventorship claim because Krawczyk assigned his rights in the '454 Patent to Certicable. (Order at 31.) More specifically, the Order held that Krawczyk's assignment to Certicable of rights to inventions disclosed by the '605 Application clearly encompasses the inventions claimed in the '454 Patent because (1) the '605 Application expressly incorporates the same inventions as the '454 Patent and (2) the express language of the assignment agreement made in connection with the '605 Application covers all of the inventions in the '454 Patent. (*Id.* at 31–32.) Finally, even if, as P2P alleges, Krawczyk had assigned his rights in the '454 Patent to P2P, P2P—as the later assignee—would still lack a concrete financial interest in the '454 Patent sufficient to support standing to bring a correction of inventorship counterclaim. (*Id.* at 33 (citing *Trireme Med., LLC v. AngioScore, Inc.*, 812 F.3d 1050, 1053 (Fed. Cir. 2016) ("When the owner of a patent assigns away all rights to the patent, neither he nor his later assignee has a concrete financial interest in the patent that would support standing in a correction of inventorship action.")).)

6

B. <u>The Parties' Positions</u>

P2P argues that the counterclaim for correction of inventorship under Section 256 should not have been dismissed *with prejudice* because the dismissal was based on a lack of standing, and dismissal for lack of subject matter jurisdiction must be *without prejudice*. (P2P's Mem. Supp. Mot. Reconsid. at 2–3.) In support of its argument, P2P identifies five Second Circuit cases that it believes I overlooked: *McNeil v. Yale Chapter of Alpha Delta Phi Int'l, Inc.*, No. 21-639-CV, 2021 WL 5286647, at *3–4 (2d Cir. Nov. 15, 2021); *Liu v. United States Cong.*, 834 F. App'x 600, 606 (2d Cir. 2020); *Katz v. Donna Karan Co.*, 872 F.3d 114, 121 (2d Cir. 2017); *Siegel v. Apergis*, 610 F. App'x 15 (2d Cir. 2015) (summary order); and *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999). (*Id.*)

In opposition, Certicable argues that dismissal for lack of standing with prejudice is appropriate where, as here, it is "plainly unlikely" that P2P can cure its standing problem. (Certicable's Opp'n Mot. Reconsid. at 2 (citing *Fieldturf, Inc. v. Sw. Recreational Indus., Inc.*, 357 F.3d 1266, 1269 (Fed. Cir. 2004)).) Certicable points out that "P2P does not challenge the Court's findings or conclusions" or offer any information in its Motion to Dismiss or Motion for Reconsideration as to how P2P could cure its lack of standing. (*Id.* at 2–3.)

On reply, and for the first time in its briefing on either the Motion for Reconsideration or the underlying Motion to Dismiss, P2P argues that it "and now Krawczyk" are "entitled at least to an opportunity to amend and cure the deficiencies" identified in the Order. (P2P's Reply Supp. Mot. Reconsid. at 3.) P2P seeks leave to add two categories of additional facts: (1) "facts relating both to the proper understanding of the terms of the assignment agreement on which Certicable relies (and the circumstances surrounding Certicable's inducement of Krawczyk to sign it)"; and (2) facts establishing reputational injury and subsequent economic consequences as a separate

7

basis for standing to bring the correction of inventorship claim. (*Id.* (citing *Shukh v. Seagate Tech., LLC*, 803 F.3d 659, 662 (Fed. Cir. 2015).) Finally, P2P argues that *Fieldturf* supports its position because there, the Federal Circuit vacated the district court's dismissal with prejudice of patent claims for lack of standing. (*Id.* (citing *Fieldturf*, 357 F.3d at 1270).)

    C.   Law on Article III Standing

      Article III standing is a "bedrock constitutional requirement" of every case. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024). "[A] plaintiff seeking correction of inventorship under [Section] 256 can pursue that claim in federal court only if the requirements for constitutional standing—namely injury, causation, and redressability—are satisfied." *Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1326 (Fed. Cir. 2009). One way to satisfy the requirements of Article III standing to bring a Section 256 claim is when a party has a "concrete financial interest" in the patent. *Id.* "When the owner of a patent assigns away all rights to the patent, neither he nor his later assignee has a concrete financial interest in the patent that would support standing in a correction of inventorship action." *Trireme Med., LLC*, 812 F.3d at 1053. Another way to satisfy the requirements of Article III standing to bring a Section 256 claim is when a party has a "concrete and particularized reputational injury." *Shukh*, 803 F.3d at 663.

      28 U.S.C. § 1295(a) grants the Federal Circuit exclusive jurisdiction over appeals of final decisions "in any civil action arising under, or in any civil action in which a party has asserted a compulsory counterclaim arising under, any Act of Congress relating to patents." Accordingly, as a general rule, district courts hearing cases arising under patent law must apply the law of the Federal Circuit to patent issues and the law of the controlling regional circuit—here, the Second Circuit—to non-patent issues. *Zeta Glob. Corp. v. Maropost Mtkg. Cloud, Inc.*, 610 F. Supp. 3d

535, 539 (S.D.N.Y. 2022) (citing *Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*, 19 F.4th 1315, 1323 (Fed. Cir. 2010) ("*Fujifilm Med.*")). District courts must, however, also apply Federal Circuit precedent to non-patent law issues where the issue is "intimately involved in the substance of enforcement of the patent right." *Madey v. Duke Univ.*, 307 F.3d 1351, 1358 (Fed. Cir. 2002). With respect to the issue of standing specifically, the Federal Circuit has held that it applies the law of the regional circuit "unless the [standing] issue is unique to patent law and therefore exclusively assigned to the Federal Circuit." *Fujifilm Med.*, 19 F.4th at 1323.

The Second Circuit case law that P2P identifies instructs that a dismissal for lack of Article III standing must be without prejudice because "when a case is dismissed for lack of federal subject matter jurisdiction, Article III deprives federal courts of the power to dismiss the case with prejudice." *McNeil*, 2021 WL 5286647, at *3; *see also Liu*, 834 F. App'x at 606 (same); *Katz*, 872 F.3d at 121 (same); *Siegel*, 610 F. App'x at 16 (holding that "once the district court determined that it lacked jurisdiction, dismissal should have been without prejudice"); *Hernandez*, 182 F.3d at 123 (holding that where the district court lacked jurisdiction over a removed case, the district court lacked power to dismiss the complaint with prejudice).

By contrast, the Federal Circuit has held that "[o]rdinarily, dismissal for lack of standing is without prejudice, . . . [but] a dismissal with prejudice is appropriate . . . where it is plainly unlikely that the plaintiff will be able to cure the standing problem." *Fieldturf*, 357 F.3d at 1269. Accordingly, the Federal Circuit has found that dismissal with prejudice for lack of standing is proper in cases where the party asserting standing was made aware of standing deficiencies in a prior case and, without curing those defects, pursued a second case. For example, in *National Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, the Federal Circuit found that the district court did not abuse its discretion in dismissing for lack of standing where the plaintiff presented

9

an inconsistent picture of ownership of the subject patent across four separate litigations and relied on a purported assignment to show standing even though it did not cure defects raised in a prior litigation with regard to the assignment. 676 F. App'x 967, 972 (Fed. Cir. 2017); *see also Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 980 (Fed. Cir. 2005) (affirming dismissal with prejudice for lack of standing where plaintiff "twice attempted and twice failed to establish standing").

  D.  <u>Application</u>

  As a threshold matter, neither party's submissions directly address whether I should apply Second Circuit or Federal Circuit law in resolving the question of whether the Order should have dismissed the Section 256 counterclaim with or without prejudice. In other words, both parties fail to address whether the standing question before me is sufficiently "unique to patent law" to require the application of the Federal Circuit's precent to an otherwise non-patent issue. *See supra* Legal Standards Section II. In any event, I find that P2P is correct under both Circuits' precedents and that the Order should have dismissed the Section 256 counterclaim *without prejudice.*

  Under Second Circuit precedent, district courts categorically must dismiss cases under Rule 12(b)(1) for lack of jurisdiction *without prejudice* because, in the Second Circuit's view, "Article III deprives federal courts of the power to dismiss the case *with prejudice.*" *Katz*, 872 F.3d at 121 (emphasis added). Therefore, the Order's dismissal of P2P's Section 256 counterclaim should have been without prejudice.

  Under Federal Circuit precedent, dismissal for lack of standing with prejudice is appropriate in limited circumstances "where it is plainly unlikely that the plaintiff will be able to cure the standing problem," i.e., where the party asserting standing was made aware of standing

deficiencies in a prior case and, without curing those defects, pursued a second case. *Fieldturf*, 357 F.3d at 1269; *National Oilwell Varco, L.P.*, 676 F. App'x at 972. It is true that P2P was on notice of Certicable's standing arguments as early as Certicable's pre-motion letter and chose not to amend the Section 256 counterclaim or cure the defects raised, but this is not the same situation as failing to establish standing in a prior litigation and bringing a new suit without addressing those same failures. Therefore, I grant P2P reconsideration on the point that the Section 256 counterclaim should have been dismissed *without prejudice*.

However, I do not address P2P's apparent request for leave to amend its counterclaim, made for the first time in its reply brief in support of the Motion for Reconsideration. (*See* P2P's Reply Supp. Mot. Reconsid. at 3.) A party cannot raise an issue for the first time in its reply brief. *Meyer v. Seidel*, 89 F.4th 117, 128–29 (2d Cir. 2023) (holding that "an issue raised for the first time only in a reply brief has been forfeited"); *see also Jackling v. Brighthouse Life Ins. Co.*, No. 22-1703-CV, 2024 WL 4100518, at *1 (2d Cir. Sept. 6, 2024). Moreover, "a party may not raise an argument for the first time in a *motion for reconsideration* . . . because the Court cannot have overlooked decisions or data that were never presented to the [C]ourt in the first instance." *Moss v. BMO Harris Bank, N.A.*, 114 F. Supp. 3d 61, 64 (E.D.N.Y. 2015), *aff'd sub nom. Moss v. First Premier Bank*, 835 F.3d 260 (2d Cir. 2016) (emphasis added). As set forth in the operative scheduling order set by Magistrate Judge Steven I. Locke, to whom this case is referred for certain pretrial matters, the parties' deadline to seek leave to amend the pleadings is 90 days after the issuance of an order on claim construction. (Scheduling Order, ECF No. 30 at 7.) Any request for leave to amend prior to that date must be properly brought on a motion pursuant to Rule 15(a)(2), Fed. R. Civ. P., not in a reply brief in support of a motion for reconsideration, and

must be accompanied by a redline of the current Counterclaims identifying the specific proposed amendments to the Section 256 counterclaim.

**II.    Whether the Declaratory Judgment Counterclaims Should Have Been Dismissed Without Prejudice.**

A.    <u>The Order</u>

The Order found that each of P2P's four declaratory judgment counterclaims is duplicative of one of Certicable's claims in the SAC and/or one of P2P's own affirmative defenses to those claims. (Order at 41–42.) More specifically, the Order found that: (1) Counterclaim I for non-infringement of the '454 Patent was duplicative of the Second Amended Complaint's claims for infringement of the '454 Patent; (2) Counterclaim III for a declaratory judgment of invalidity and/or unenforceability of the '454 Patent was duplicative of P2P's third and fourth affirmative defenses for invalidity and unenforceability of the '454 Patent; (3) Counterclaim VI for non-infringement of the "Tinifiber" trademark was duplicative of the Second Amended Complaint's claims for infringement of the "Tinifiber" trademark; and (4) Counterclaim VII for a declaratory judgment of invalidity of the "Tinifiber" trademark mirrored Certicable's claims for federal trademark infringement and common law trademark infringement and P2P's tenth affirmative defense of invalidity of the "Tinifiber" trademark. (*Id.*) Because the Order found the declaratory judgment claims duplicative and dismissed them on that basis, it did not address Certicable's argument that the declaratory judgment counterclaims failed to state a claim for relief under Rule 12(b)(6).

B.    <u>The Parties' Positions</u>

P2P appears to make two arguments regarding the dismissal with prejudice of its declaratory judgment counterclaims. First, in its moving brief, P2P argues that the declaratory judgment counterclaims for non-infringement and invalidity should not have been dismissed *with*

*prejudice* because the analysis in the Order "overlooked the possibility that Certicable's claims would not ultimately be resolved on the merits." (P2P's Mem. Supp. Mot. Reconsid. at 3.) If Certicable were to "dismiss its own claims without prejudice under [Fed. R. Civ. P.] 41(a)," P2P argues, "P2P would not be able to secure a ruling on what would remain a live controversy." (*Id.*) P2P identifies one binding Second Circuit decision it believes I overlooked—*Leach v. Ross Heater & Mfg. Co.*, 104 F.2d 88 (2d Cir. 1939)—and three district court decisions: *Shunock v. Apple, Inc.*, 738 F. Supp. 3d 371, 385 (S.D.N.Y. 2024); *Solid Oak Sketches, LLC v. 2K Games, Inc.*, No. 16-cv-724, 2017 WL 11709196 (S.D.N.Y. May 16, 2017); and *Orientview Techs. LLC v. Seven For All Mankind, LLC*, No. 13-cv-0538, 2013 WL 4016302 (S.D.N.Y. Aug. 7, 2013). (*See id.* at 4.)

In opposition, Certicable argues that P2P misunderstands the law because, under Rule 41(a), Fed. R. Civ. P., Certicable cannot dismiss its action without a stipulation or court order because P2P has served an answer to the Second Amended Complaint. (Certicable's Opp'n Mot. Reconsid. at 3–4.) Certicable contends that none of the four cases P2P identifies supports its argument that dismissal should have been without prejudice; rather, "through its parentheticals, P2P seeks to reargue that its declaratory judgment claims should not have been dismissed at all." (*Id.* at 4.) Certicable argues that *Leach*, 104 F.2d 88, is inapposite because there, the plaintiff sought to drop the infringement action whereas here, the parties continue to litigate infringement of the '454 Patent. (*Id.*)

On reply, P2P argues not just that the declaratory judgment claims should have been dismissed without prejudice, but that the case law it submitted "demonstrat[es] that P2P's counterclaims for declaratory judgment of non-infringement and invalidity are not in fact duplicative of affirmative infringement claims, *and should not have been dismissed*" at all.

13

(P2P's Reply Supp. Mot. Reconsid. at 4 (emphasis added).) P2P reiterates its argument from the Motion to Dismiss briefing that its declaratory judgment counterclaims "are an ordinary and accepted aspect of nearly every patent and trademark infringement case." (*Id.* at 5.)

C.   Law on Declaratory Judgment Counterclaims

In exercising its discretion over whether to adjudicate a declaratory judgment claim, a district court must determine "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 105 (2d Cir. 2012); *Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*, No. 21-70-CV, 2021 WL 6060710, at *5 (2d Cir. Dec. 20, 2021). To determine whether the judgment will serve a useful purpose, courts consider the Second Circuit's decisions in two patent infringement cases, *Leach v. Ross Heater & Mfr. Co.*, 104 F.2d 88 (2d Cir. 1939), and *Larson v. Gen. Motors Corp.*, 134 F.2d 450 (2d Cir. 1943), which together stand for the proposition that "a counterclaim seeking a declaratory judgment is not duplicative or redundant if it asserts an independent case or controversy which would remain viable after a dismissal of the plaintiff's claim." *Ferring B.V. v. Fera Pharms., LLC*, No. 13-cv-4640, 2014 WL 4829053, at *6 (E.D.N.Y. Aug. 13, 2014), *report and recommendation adopted*, 2014 WL 4829458 (E.D.N.Y. Sept. 29, 2014), *adhered to on reconsideration*, 2015 WL 5307793 (E.D.N.Y. Sept. 10, 2015).

In *Leach*, the plaintiff alleged patent infringement and the defendant raised an affirmative defense of invalidity and brought a counterclaim seeking a declaration of non-infringement *and* invalidity. 104 F.2d at 89. The Second Circuit concluded that dismissal of the counterclaims was improper because, in light of the counterclaim for invalidity and the defendant's allegations that

the plaintiff had threatened future infringement actions against the defendant's customers, a case or controversy would remain even if the plaintiff voluntarily dismissed the infringement suit. *Id.* at 91–92. ("The need for declaratory judgment is diminished, it is true, by the fact that the patentee has commenced his suit, but the need cannot be said to have wholly disappeared; the patentee may, for all that the defendant knows, withdraw his suit without prejudice and continue broadcasting assertions of infringement.").

By contrast, the Second Circuit in *Larson* held that dismissal of the defendant's counterclaim for a declaratory judgment of non-infringement was proper. 134 F.2d at 452–53. There, the plaintiff alleged patent infringement and the defendant counterclaimed for non-infringement only. *Id.* at 452. Unlike the defendant in *Leach,* the defendant in *Larson* did not also seek a determination that the plaintiff's patent was invalid. *Id.* When the plaintiff voluntarily dismissed his patent infringement claim on the merits, the district court retained jurisdiction over the counterclaim. *Id.* The Second Circuit reversed, finding that because the plaintiff's claims had been dismissed and the defendant faced no future threat of litigation, there was no continuing case or controversy. *Id.* at 452–53.

Thus, under the *Leach/Larson* line of cases, if there is a cause of action for infringement and a declaratory judgment counterclaim "asserts an independent case or controversy," such as invalidity or unenforceability, "which would remain viable after a dismissal of the plaintiff's claim," courts decline to dismiss the non-infringement counterclaims as duplicative. *See Shunock*, 738 F. Supp. 3d at 385 (denying motion to strike non-infringement counterclaims as redundant because defendant asserted invalidity counterclaims "that would continue to exist absent a dismissal on the merits of [plaintiff's] infringement claims"); *Town & Country Linen Corp. v. Ingenious Designs LLC*, 18-cv-5075, 2020 WL 3472597, at *14 (S.D.N.Y. June 25,

15

2020) (denying motion to dismiss non-infringement counterclaim as duplicative because the defendants' answer alleged affirmative defenses and counterclaims for invalidity, thus asserting an "independent case or controversy" that "would remain viable after dismissal of the [plaintiff's] claims"); *Orientview Techs. LLC*, 2013 WL 4016302, at *4–5 (denying motion to strike declaratory judgment counterclaim for non-infringement where defendant also alleged declaratory judgment counterclaim for invalidity).

D.   Application

Under the *Leach/Larson* line of cases, it was error to dismiss P2P's declaratory judgment counterclaims as duplicative because Counterclaim III for a declaratory judgment of invalidity and/or unenforceability of the '454 Patent and Counterclaim VII for a declaratory judgment of invalidity of the "Tinifiber" trademark each "assert[] an independent case or controversy [which] would remain viable after dismissal" of Certicable's infringement claims. *Town & Country Linen Corp.*, 2020 WL 3472597, at *14 (denying motion to dismiss non-infringement counterclaim as duplicative because defendants' answer alleged affirmative defenses and counterclaims for invalidity). Even if Certicable's claims for infringement of the '454 Patent and "Tinifiber" trademark were resolved on the merits, P2P would still have live counterclaims as to the validity and enforceability of both the '454 Patent and "Tinifiber" trademark. *See Orientview Techs. LLC*, 2013 WL 4016302, at *4–5; *Ferring*, 2014 WL 4829053, at *6; *Shunock*, 738 F. Supp. 3d at 385.

Therefore, I grant reconsideration as to the dismissal with prejudice of both Certicable's invalidity/unenforceability counterclaims—Counterclaim III (invalidity and/or unenforceability of the '454 Patent) and Counterclaim VII (invalidity of the "Tinifiber" trademark)—as well as its non-infringement counterclaims—Counterclaim I (non-infringement of the '454 Patent) and

16

Counterclaim VI (non-infringement of the "Tinifiber" trademark). *See Orientview Techs. LLC*, 2013 WL 4016302, at *4 ("Unlike in *Larson*, the defendants in *Leach* brought invalidity counterclaims in addition to non-infringement ones, a fact that courts have found important when assessing whether a counterclaim for declaratory judgment of non-infringement would survive dismissal of the plaintiff's claims.") I find that these four claims should not have been dismissed, and thus I reinstate them.

### III.    Failure to State a Claim

In light of this reconsideration, I must also reach Certicable's argument raised in its Motion to Dismiss that I should dismiss P2P's four declaratory judgment counterclaims under Rule 12(b)(6) for failure to state a claim. (Certicable's Mem. Supp. Mot. Dismiss Countercls. at 14–15.)

####   A.   The Parties' Positions

Certicable argues that Counterclaims I, III, VI, and VII fail to state a claim for relief because all of these claims "are devoid of any factual allegations sufficient to state a claim" but only expressly addresses Counterclaim I (non-infringement of the '454 Patent) and Counterclaim III (invalidity and/or unenforceability of the '454 Patent).[3] (*Id.* at 15.) Specifically, Certicable contends that the assertion in Counterclaim I that "P2P does not infringe any valid claims of the '454 Patent" is a "legal conclusion" that does not offer facts supporting a plausible non-infringement counterclaim. (*Id.*) Certicable contends that Counterclaim I's "secondary allegation that P2P owns an undivided joint interest in the '454 Patent falls within the [correction of]

---

[3] Although Certicable's brief refers to "Counterclaim II," the brief cites to paragraphs under the heading for Counterclaim III. Accordingly, the Court understands Certicable's reference to be to Counterclaim III. (*See* Certicable's Mem. Supp. Mot. Dismiss Countercls. at 14–15.)

inventorship counterclaim." (*Id.* at 16.) Finally, Certicable argues that the allegation in Counterclaim III that the '454 Patent is invalid and unenforceable because it fails to name Krawczyk as an inventor likewise goes to the Section 256 counterclaim, and Counterclaim III's remaining allegations "merely recite[] the legal standards for invalidity under 35 U.S.C. §§ 101, 102, 103, and 112 but do[] not explain the factual basis" for its legal conclusion of invalidity and/or unenforceability. (*Id.*)

In opposition, P2P fails to identify any specific factual allegations that support its declaratory judgment counterclaims. (*See* P2P's Opp'n Mot. Dismiss Countercls. at 21 (arguing only that "Certicable wrongly claims that P2P lacks factual support for its allegations of non-infringement and invalidity of the patent-in-suit.").) P2P then asserts that "[c]ourts routinely permit declaratory judgment counterclaims of invalidity and non-infringement allegations similar to those pled by P2P to proceed to discovery," citing five cases: (1) *Leach*, 104 F.2d at 90; (2) *CryoLife, Inc. v. C.R. Bard, Inc.*, No. 14-cv-559, 2015 WL 1069397, at *4 (D. Del. Mar. 10, 2015); (3) *Helferich Patent Licensing, LLC v. J.C. Penney Corp.*, No. 11-cv-9143, 2012 WL 3776892, at *3 (N.D. Ill. Aug. 28, 2012); (4) *Tannerite Sports, LLC v. Jerent Enters., LLC*, No. 15-cv-180, 2016 WL 1737740, at *9–10 (D. Or. May 2, 2016); and (5) *TCL Comms. Tech. Holdings, Ltd. v. Telefonakatiebologet LM Ericsson*, No. 14-cv-341, 2014 WL 12588293, at *9 (C.D. Cal. Sept. 30, 2014). (*Id.* at 21–22.) In a footnote, P2P also asserts that Certicable "does not address Counterclaims VI (Declaration of Non-Infringement of the TINIFIBER Mark) or VII (Declaration of Invalidity of the TINIFIBER Mark) in its Brief." (*Id.* at 21 n.63.)

On reply, Certicable again asserts that all four declaratory judgment counterclaims are not sufficiently supported by factual allegations to state a claim and argues that P2P "ignores Certicable's cited case law and misrepresents other cases" in order to characterize its pleading as

18

sufficient. (Certicable's Reply Supp. Mot. Dismiss Countercls. at 9–10.) Certicable specifically

notes that in *CryoLife*, on which P2P relies, the counterclaimant did not just allege legal

conclusions as to non-infringement but "included further allegations comparing the accused

product to the prior art and the patentee's arguments about the scope of the asserted patent

'during prosecution.'" (*Id.* at 9–10 (citing *CryoLife*, 2015 WL 1069397, at *4).)

B. Law on 12(b)(6) Motion to Dismiss Counterclaims

Rule 12(b)(6) "applies equally to claims and counterclaims; therefore, a motion to

dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint."

*Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 202

(S.D.N.Y. 2020). A complaint must plead sufficient facts to "state a claim to relief that is

plausible on its face." *Green v. Dep't of Educ. of N.Y.C.*, 16 F.4th 1070, 1076–77 (2d Cir. 2021)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In determining if a claim is

sufficiently plausible to withstand dismissal," a court "accepts all factual allegations as true" and

"draws all reasonable inferences in favor of the plaintiffs . . . ." *Melendez v. City of New York*, 16

F.4th 992, 1010 (2d Cir. 2021). Nevertheless, a court is "not required to credit conclusory

allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester Cnty.*, 3

F.4th 86, 91 (2d Cir. 2021). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard

requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord We

The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 144 (2d Cir. 2023).

While "detailed factual allegations" are not required, "a pleading that offers labels and

conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556

U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

C.  Analysis

As explained below, I grant dismissal of Counterclaim I with prejudice but deny dismissal of Counterclaims III, VI, and VII.

i.  *Counterclaim I: Non-Infringement of the '454 Patent*

With respect to Counterclaim I, P2P's counterclaim offers only legal conclusions and fails to allege any specific facts supporting a plausible counterclaim that P2P is entitled to a declaration of non-infringement of the '454 Patent. P2P alleges merely that it "does not infringe any valid claims of the '454 Patent, literally or under the doctrine of equivalents, or otherwise." (Countercls. ¶ 64.) This is a legal conclusion unsupported by "factual enhancement." *Iqbal*, 556 U.S. at 678; *see also E&E Co., Ltd. v. London Luxury LLC*, 571 F. Supp. 3d 64, 68–69 (S.D.N.Y. 2021) (dismissing non-infringement counterclaim where defendant "fail[ed] to plead factual allegations regarding non-infringement). Counterclaim I also alleges that "P2P owns an undivided joint interest in the '454 Patent" such that "Certicable has no right to exclude P2P from practicing the claimed invention." (Countercls. ¶ 64.) As Certicable notes, however, this contention is duplicative of P2P's correction of inventorship counterclaim; given my finding that Krawczyk assigned his rights in the '454 Patent to Certicable, P2P's allegation that "Certicable has no right to exclude P2P from practicing the claimed invention" is implausible. *See supra* Discussion Section I.A.

The cases on which P2P relies to argue that courts "routinely permit" counterclaims pleading "non-infringement allegations similar to those pled by P2P to proceed to discovery" are inapposite. As discussed in detail above, the Second Circuit in *Leach* addressed whether the

defendant's non-infringement counterclaims under the Declaratory Judgment Act were mirror images of the plaintiff's infringement claims and did not specifically address the sufficiency of the pleadings under Rule 12(b)(6). *See Leach*, 104 F.2d at 91. In any event, *Leach* was decided in 1939, predating the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), by approximately 70 years. Thus, while *Leach* is still controlling law with respect to the above "mirror image" analysis, it is not controlling law with respect to the relevant pleading standard on a motion to dismiss counterclaims. Additionally, as Certicable points out in its reply brief, in *CryoLife*, the defendant did not just tender legal conclusions as to non-infringement, but specifically alleged that during patent prosecution, the plaintiff argued that the defendant's allegedly infringing product was "fundamentally different" than the plaintiff's product. *CryoLife*, 2015 WL 1069397, at *4; Certicable's Reply Supp. Mot. Dismiss Countercls. at 9–10.

      In fact, in *Tannerite Sports, LLC*, which P2P cites in its opposition, the District of Oregon court *dismissed* the defendant's non-infringement counterclaims, holding that the defendant "ha[d] not alleged sufficient facts that when taken as true, support a reasonable inference defendant did not sell or offer to sell a product that had no substantial non-infringing use" and thus "l[eft] the Court to guess which facts support its claim for relief, as detailed factual allegations remain absent from the pleading." 2016 WL 1737740, at *5. Here, too, P2P has not alleged sufficient facts for the Court to assess the plausibility of its non-infringement counterclaim. Therefore, I dismiss Counterclaim I for failure to state a claim.[4]

---

[4] Where, as here, P2P has asserted non-infringement of the '454 Patent as an affirmative defense, "the effect of dismissing [the] [c]ounterclaim is trifling at best." *Orientview Techs. LLC*, 2013 WL 4016302, at *7 n.7.

ii.    *Counterclaim III: Invalidity or Unenforceability of the '454 Patent*

With respect to Counterclaim III, however, P2P has provided sufficient factual allegations to sustain its counterclaim that the '454 Patent is invalid or unenforceable. As an initial matter, neither party addresses whether the relevant pleading standard for Counterclaim III is Rule 8(a), Fed. R. Civ. P., (the generally applicable "short and plain statement" pleading standard) or Rule 9(b), Fed. R. Civ. P. (requiring, when a party alleges "fraud or mistake," that the pleading "state with particularity the circumstances constituting fraud or mistake"). District courts have held that unenforceability is generally an equitable remedy premised on fraud, and thus Rule 9(b)'s heightened pleading standard applies. *Belcher Pharms. LLC v. Hospira, Inc.*, No. 17-cv-775, 2019 WL 2503159, at *1 (D. Del. June 5, 2019) (Stark, J.) (citing *Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 828 (Fed. Cir. 2010) ("If . . . the sole named inventor [ ] deliberately misrepresented that he invented the [patented idea] to the [Patent and Trademark Office], his deceit would spoil the entire barrel, leaving the . . . patent unenforceable."). By contrast, invalidity is a statutory remedy governed by Rule 8's ordinary pleading standard. *Id.* In any event, as detailed below, I find that P2P has pled Counterclaim III with sufficient particularity to survive Certicable's Motion to Dismiss under either standard.

I agree with Certicable's argument that Paragraph 75 of the Counterclaims "merely recites the legals standards for invalidity under 35 U.S.C. §§ 101, 102, 103, and 112." Certicable's Mem. Supp. Mot. Dismiss Countercls. at 16; *see Orientview Techs. LLC*, 2013 WL 4016302, at *7 (dismissing invalidity counterclaim where counterclaim alleged invalidity "for failure to comply with one or more of the requirements of . . . [35 U.S.C. §§] 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto"); *see* Countercls. ¶ 75. Accordingly, these allegations alone do not establish an invalidity or unenforceability counterclaim.

22

Paragraphs 73 and 74, however, allege that the '454 Patent is invalid under 35 U.S.C. §§ 101 and 115(a) because the '454 Patent fails to name Krawczyk as an inventor of the claimed subject matter. Countercls. ¶¶ 73–74; 35 U.S.C. § 115(a) ("Section 115(a)") (providing that "[a]n application for patent . . . shall include, or be amended to include, the name of the inventor for any invention claimed in the application" and that, with some exceptions, "each individual who is the inventor or a joint inventor of a claimed invention in an application for patent shall execute an oath or declaration in connection with the application"); 35 U.S.C. § 282(b) (providing that a patent may be found invalid "on any ground specified in part II [of Title 35] as a condition for patentability," which includes Section 115(a)). P2P supports Counterclaim III with numerous factual allegations concerning Krawczyk's history with Certicable and his involvement in the development of the technologies resulting in the '454 Patent, including the following: (1) Certicable issued a doctored Newswire press release on its website to remove Newswire's reference to Krawczyk as an inventor just prior to applying for a new patent; (2) rather than correct Patent '562 to list Krawczyk as an inventor, Certicable filed a new patent application on February 25, 2016, deliberately omitting Krawczyk as an inventor; (3) under the same conceit, Certicable applied for a series of additional patents, not listing Krawczyck as an inventor; and (4) Krawczyk was a rightful inventor, having invented, among other things, the cable's "outer jacket having an inside diameter slightly greater than an outside diameter of the non-interlocking armor." (*See* Countercls. ¶¶ 24–26, 30–42.) These allegations are sufficiently specific to survive a motion to dismiss under both Rule 8(a) and Rule 9(b). *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) ("In sum, to plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific

who, what, when, where, and how of the material misrepresentation or omission committed

before the PTO.").

Certicable's argument that P2P's invalidity counterclaim is premised on Certicable's

failure to identify Krawczyk as an inventor and therefore "falls with the inventorship

counterclaim" misses a key distinction between the distinct causes of action for *correction of*

*inventorship* and *invalidity*. (Certicable's Mem. Supp. Mot. Dismiss Countercls. at 16.) As the

Order explained, P2P lacks Article III standing to assert a correction of inventorship

counterclaim because Krawczyk assigned his rights in the '454 Patent to Certicable and thus P2P

does not have a "concrete financial interest" in the '454 Patent. (Order at 28–34.) Here, by

contrast, the P2P's invalidity contention is premised on the allegation that the business activities

in which P2P is presently engaged (i.e., developing and selling a competing armored cable

product) cannot infringe the '454 Patent because that Patent is invalid. *See* 35 U.S.C. § 282(b)(2)

(providing for defense of invalidity in response to allegations of patent infringement).

Counterclaim III satisfies the injury-in-fact, causation, and redressability requirements for Article

III standing because a finding of invalidity would mean that P2P could continue its business

activities over which Certicable is currently suing P2P without fear of infringing the '454 Patent.

*See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

Likewise, Certicable's citation to 35 U.S.C. § 256(b) ("Section 256(b)") to argue that the

"error of omitting inventors . . . shall not invalidate the patent" is inapposite and incomplete.

(Certicable's Mem. Supp. Mot. Dismiss Countercls. at 16.) First, the relevant statute concerning

P2P's invalidity claim is Section 115, not Section 256(b), which concerns correction of

inventorship. Second, and in any event, the full relevant portion of Section 256(b) reads: "The

error of omitting inventors or naming persons who are not inventors shall not invalidate the

24

patent in which such error occurred *if it can be corrected as provided in this section*." 35 U.S.C. § 256(b) (emphasis added); *see also* 35 U.S.C. § 115(h)(3) ("A patent shall not be invalid or unenforceable based upon the failure to comply with a requirement under this section *if the failure is remedied . . .*") (emphasis added). As is apparent from Certicable's lawsuit, it has no intention of "correct[ing]" or "remedy[ing]" the inventorship issue P2P alleges, leaving P2P to litigate the counterclaim for invalidity or unenforceability of the '454 Patent.

Accordingly, I deny Certicable's Motion to Dismiss with respect to Counterclaim III.

    *iii.*    *Counterclaims VI and VII: Non-Infringement and Invalidity of the Tinifiber Trademark*

Finally, Counterclaims VI and VII plausibly allege counterclaims for non-infringement of the Tinifiber trademark and invalidity of the Tinifiber trademark, respectively. As P2P notes in its opposition, Certicable does not substantively address *why* Counterclaims VI and VII fail under Rule 12(b)(6), instead making only the bare assertion that these counterclaims are "devoid of any factual allegations sufficient to state a claim." (P2P's Opp'n Mot. Dismiss Countercls. at 21 n.63; Certicable's Mem. Supp. Dismiss Countercls. at 15.) Certicable's Motion to Dismiss these two counterclaims may be denied on this basis alone. *See In re Demetriades*, 58 F.4th 37, 54 (2d Cir. 2023) (holding that, where a party refers to an issue in only "a perfunctory manner, unaccompanied by any effort at developed argumentation, it must be deemed waived—or, more precisely, *forfeited.*").

In any event, P2P's Counterclaims do contain factual allegations sufficient to support its counterclaims for non-infringement and invalidity. With respect to Counterclaim VI, P2P identifies the eight-factor trademark infringement test under *Polaroid Corp. v. Polorad Elecs. Corp.*, 287 F.2d 492, 496 (2d Cir. 1961), and provides factual allegations relevant to these factors, including that: (1) the "Tinifiber" trademark is descriptive of Certicable's product and

thus generic; (2) Certicable disclaimed the "Tinifiber" trademark in its prior registration by seeking to register "Tinifiber *by Certicable*" (emphasis added); (3) there is no evidence that any consumers have been confused between Certicable's "Tinifiber" and P2P's "Nanofiber"; (4) P2P offers a superior product; and (5) consumers of Certicable's and P2P's products are sophisticated and thus likely to understand the distinction between "Tinifiber" and "Nanofiber," in particular because these consumers will understand that "fiber" is merely descriptive of the fact that both products are fiberoptic cables. (Countercls. ¶¶ 97–102.) With respect to Counterclaim VII, P2P alleges that Certicable has abandoned its use of the "Tinifiber" trademark by cancelling or abandoning three prior federal trademark applications for this trademark, identifying the specific trademark application numbers. (*Id.* ¶ 109.)

At this stage, these allegations are sufficient, and, therefore, I deny dismissal of Counterclaims VI and VII.

## CONCLUSION

For the reasons set forth above, the Court grants P2P's Motion for Reconsideration (ECF No. 66). The Court amends its prior Order (ECF No. 64) as follows:

(1) Counterclaim II is dismissed *without prejudice*;

(2) Counterclaims I, III, VI, and VII are reinstated because they should not have been dismissed as duplicative "mirror images" of Certicable's claims;

(3) Counterclaim I is nevertheless dismissed with prejudice under Rule 12(b)(6); and

(4) Certicable's Motion to Dismiss Counterclaims III, VI, and VII under Rule 12(b)(6) is denied, and these counterclaims may proceed.

Dated: Central Islip, New York
February 26, 2025

    */s/ Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge